## JOHN V. HAVERTY v. ALICE HAVERTY.

1. DIVORCE, *Procured by Fraud; Review.* Where an action is commenced by a defendant within six months after the rendition of a decree of divorce to vacate the same upon the charge of the fraud of the plaintiff, and in such case a judgment is rendered against the defendant, a subsequent proceeding to review said judgment may be commenced in the supreme court within one year after its rendition. (Laws of 1881, ch. 126, § 2.)

2. ATTORNEY AND CLIENT; *Good Faith.* An attorney, when acting for his client, is bound to the most scrupulous good faith. If he corruptly sells out his client's interest to the other side, a judgment thus obtained may be set aside on the charge of fraud. So, also, if a plaintiff is guilty of so influencing the attorney of the defendant, by the payment of money, without the knowledge or consent of his client, as to make it the interest of said attorney that plaintiff should obtain a judgment against his client, and such attorney, in the absence of his client, does not make any resistance to the rendition of the judgment in favor of the plaintiff, a new action may be sustained by the defendant to set aside the former judgment and open the case for a new and fair hearing.

*Error from Johnson District Court.*

ON January 15, 1883, *Alice Haverty* filed her petition in the district court of Johnson county, in this state, asking a decree of divorce against *John V. Haverty,* on the following grounds, to wit: First, gross neglect of duty; second, extreme cruelty and inhuman treatment; third, abandonment for more than one year; and demanded the custody of George W. Haverty, a minor child, and asked that John V. Haverty be debarred of all interest in her property. At the time the action was commenced and during all the time it was pending, until after the decree was rendered as prayed for in the petition, John V. Haverty was absent from the state and in the state of Colorado. After the commencement of the action, John V. Haverty employed F. R. Ogg, a practicing attorney of Johnson county, to make a defense therein, and Ogg prepared an answer, containing a full and complete defense to the petition, forwarded it to John V. Haverty at Pueblo, Col., who

verified it and returned it to his attorney, by whom it was filed in court. On June 28, 1883, the action was tried by the district court, and judgment rendered granting Alice Haverty a divorce and the custody of the minor child, George W. Haverty, conditioned, however, that the said John V. Haverty be allowed to see the child at all suitable and proper times. The judgment also barred John V. Haverty of all interest in the real estate described in the petition, but provided as follows: "By agreement in open court, Alice Haverty is to pay to the clerk of the court the sum of $100 alimony to John V. Haverty."

On December 21, 1883, within six months from the rendition of the judgment of June 28th, John V. Haverty commenced this action in the district court of Johnson county, against Alice Haverty, to set aside that judgment, upon the following grounds: First, because he was prevented by unavoidable casualty and misfortune from appearing and making a defense at the trial; second, because the judgment was obtained by falsehood, collusion and fraud practiced by and on the part of Alice Haverty.

Alice Haverty filed her answer, containing a general denial of the allegations in said petition, and the case was tried on June 25, 1884, by the court without a jury, and judgment rendered in favor of Alice Haverty and against John V. Haverty. Haverty then filed his motion for a new trial, which was overruled. The witnesses examined on the trial of the divorce case were Alice Haverty and her mother, Mrs. Bowen. F. R. Ogg, attorney for John V. Haverty, was present at the trial, but did not cross-examine either of the witnesses. He accepted the $100 mentioned as alimony in the decree of divorce. John T. Burris, the attorney for Alice Haverty, testified upon the trial of this case, in regard to the payment of this $100, as follows:

"I am acquainted with the parties to this suit, and am one of the attorneys for the defendant in this action. I was attorney for the plaintiff in the case of Alice Haverty v. John V. Haverty, and was present at the trial of said action at the

June, 1883, term of the Johnson county district court. I examined the witnesses on the part of the plaintiff on said trial. The plaintiff and her mother, Mrs. Bowen, were examined on the part of the plaintiff, and no other witnesses were produced on the part of the plaintiff, unless her sister, Mrs. Hadley, was examined, and I do not recollect certainly whether she was examined, or not. The principal witness was plaintiff. Mr. Ogg, the attorney for defendant, was present at the trial. No witnesses were produced or examined on the part of the defendant, and my recollection is that Mr. Ogg did not examine the plaintiff's witnesses. I don't remember that he asked any questions. I had a conversation with Mr. Ogg before the trial, and we agreed that the plaintiff should pay $100, to be paid to the defendant's attorney, and that the plaintiff could take judgment in her favor — the defendant to make no defense in the case. I had several conversations with the defendant's attorney, and the matter came on by degrees, and we finally made the agreement for the payment of the $100. Mr. Ogg said that Haverty owed him his fee in the case, and owed Julien & Mahaffie a livery bill, and also owed a note, on which he (Ogg) was surety, and that the $100 would not more than pay the three claims, and that the claim of Julien was in his hands for collection. I understood that the $100 was to be applied to the payment of these three claims. Ogg said that if we would pay the $100, he would not make any defense, and would not ask for a continuance, but that if we would not do that, he would have to apply for a continuance. He did not claim to have authority from Haverty to compromise the case. Ogg said that he had not heard from Haverty for some time, and that Haverty had not answered his letters."

*(Cross-examination.)*

"Mr. Ogg said that the claim of Julien was in his hands for collection. He said that Haverty had an interest in the plaintiff's land and I paid the $100 to prevent a continuance. Ogg said he had not heard from Haverty for some time, and was not ready for trial, and would have to apply for a continuance. I was afraid of a successful application for a continuance, or I would not have paid the $100. It was paid to prevent a continuance.

"Q. What was the $100 paid for? Was it paid as alimony, or in lieu of improvements on the land?

"A. It was paid in lieu of improvements. Ogg did not agree in those words that he would not make any defense, but

it was my understanding that there would be no contest if the $100 was paid. I understood the $100 was to be applied to meet the three obligations, and did not understand that any of it was to be paid to Haverty himself."

J. B. Marshall, clerk of the district court of Johnson county, testified:

"I was present at the trial of the case of Alice Haverty v. John V. Haverty. I think the plaintiff and her mother were sworn and examined as witnesses on the part of the plaintiff. I do not think that any other witnesses were examined on the part of the plaintiff. No witnesses were examined on the part of the defendant. Mr. Ogg appeared as attorney for the defendant. He did not cross-examine any of the witnesses. After the judgment, Col. Burris, attorney for Alice Haverty, paid me $100 to be paid to Mr. Ogg, attorney for the defendant, and I paid the $100 to Mr. Ogg. Mr. Ogg made no objection to the plaintiff taking the decree. Mr. Ogg agreed with the attorneys for the plaintiff that if they would pay him $100, he would make no objection to their taking their decree. After the evidence was offered and when the plaintiff took judgment, the attorneys stated to the court that they had agreed to an order for the payment of $100 by plaintiff to defendant as alimony. The judge remarked that he knew nothing of any such arrangement, and would not make any order of the kind. I do not recollect the evidence offered on the part of the plaintiff."

F. R. Ogg was introduced as a witness for the defendant, Alice Haverty, and testified as follows:

"I was attorney for John V. Haverty in the case of Alice Haverty v. John V. Haverty. I was employed in the case about February, 1883. Haverty was in Pueblo, Colorado, and I received the first letter from him from Pueblo about that time. I think I have not this letter. The first letter I have now from Haverty is dated March 24, 1883. I know that I received other letters before I received it. I received four letters from him, all from South Pueblo. I do not know that he ever left there. The date of the last letter I now have is April 8. I think it is the last I received from him, but I am not positive. I wrote to him after that, and stated that the case would be called in June, that I wanted a list of the witnesses, and that I could not go to trial very well without him. It was a short letter, and I received no answer. I

went to Mr. Hadley and to Mr. Julien and made inquiry about him; I also went to Patrick, who knew him in South Pueblo. Patrick stated that he had gone to the Red Mountain country. I wrote to him again at South Pueblo, and stated in the letter that it was necessary for him to be here. I addressed the letter to Pueblo. This letter was returned. I have not this letter. I have two of the letters I received from him, and they are the ones that have been read in evidence. I do not know where the others are. One was prior and one subsequent to the letters I have. I don't know where these letters are; I think they were both received before the two I have, but I am not sure about this. I have made search for these letters. The first letter said he did not want the exposure of a trial, that he only wanted the custody of his little boy; that he cared only for his child; that he did not believe he could live with his wife again. He said to do the best I could for him. I never informed him it would not be necessary for him to be here at the time of trial. He said he had no money. I asked for a list of his witnesses in one of the letters. He never furnished me the list. I had no conversation with anyone for the plaintiff but Col. Burris. I had no defense to make at the June term. The issues were made up after the March term. At the June term I did not believe I could make a showing. I told Burris that Haverty had made improvements, and ought to have pay for them. I wanted to make the payment of the $100 a matter of record.

"Q. What was the $100 paid for?

"A. It was paid in consideration of the improvements on the place. It was not paid in consideration of my not applying for a continuance or of my not making a defense.

"I would not consent to an order giving her exclusive control of the child, but had a condition inserted in the order that Haverty was to have the privilege of seeing the child."

*(Cross-examination.)*

"I applied the $100 in payment of a note on which Julien and I were sureties, on a livery bill Haverty owed Julien & Mahaffie, and on my fee. Haverty never authorized me to apply the money in satisfaction of these claims, and I had no orders or authority from him to settle any of his debts. Haverty did not receive any of the $100. I never informed Haverty what I had done in the case, or how I had expended the $100, and never accounted for it to him. The first time I saw Haverty after this trial was in Olathe, in November, 1883. He refused to speak to me. He never explained to me why

he did not write to me. He never authorized me to make any compromise of the case, or to receive the $100, and he never told me he did not want me to make any defense. At the June term I found the plaintiff insisting on a trial. I could not learn defendant's address, and thought the only question was to obtain a favorable decree. I did not see de-fendant until after the June term expired."

Alice Haverty testified:

"I had no conversation with Ogg about the compromise of the case of Alice Haverty v. John V. Haverty at the June, 1883, term of the district court, or about the payment of the $100. The only conversation I had about the matter was with my attorneys. I paid the $100 as alimony.

"Q. What did you pay the $100 alimony for? A. I was willing to allow him $100 for improvements, and paid the $100 for that purpose."

William Julien testified:

"I received a letter from John V. Haverty early in the year 1883. He said he did not feel like fighting the woman, but wanted the care and custody of the child. I have looked all morning for this letter, but cannot find it."

(*Cross-examination.*)

"He said in the letter that he did not want to persecute his wife, but wanted the care and custody of his boy, George."

John V. Haverty excepted to the rulings and judgment of the court, and brings the case here.

*A. L. Hayes,* for plaintiff in error.

*John T. Burris, John T. Little,* and *Samuel T. Seaton,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: A preliminary question is presented in the motion filed by the defendant to dismiss this case, upon the ground that the petition in error was not filed within six months after the rendition of the judgment of divorce obtained by Alice Haverty against John V. Haverty. (Laws of 1881, ch. 126, § 1.) It appears from the record that the divorce was granted June 28, 1883. This action to vacate that

judgment for fraud was commenced December 21, 1883, and the judgment rendered therein on June 25, 1884. The petition in error was filed on May 4, 1885 — less than one year after the rendition of the judgment sought to be reviewed. This is not a proceeding to modify or reverse, by any order or judgment of this court, the decree of divorce, but the proceeding is one brought here to reverse the judgment of June 25. If that judgment, however, be vacated upon the ground that the decision of the trial court is not supported by the evidence, it will have the ultimate effect of setting aside the divorce. Section 1, of said chapter 126, provides, among other things:

"No proceeding for reversing or vacating the judgment or decree divorcing said parties shall be commenced unless within six months after the rendition of said judgment or decree, and during said six months and the pendency of said proceeding for reversing or vacating said judgment or decree, it shall be unlawful for either of said parties to marry, and any person so marrying shall be deemed guilty of bigamy: *Provided,* Such decree shall be final; and no proceedings in error to the supreme court shall be allowed or taken unless a notice of an intention to prosecute such proceedings in error be given in open court and noted on the journal of the court, within three days after the entry of the decree or judgment, and the petition in error and transcript be filed in the supreme court within three months after the rendition of such judgment or decree."

This action for vacating the decree divorcing the parties was commenced within six months after the rendition of that decree. No proceedings in error were ever brought to the supreme court for reversing or vacating the decree of divorce, and no such petition in error is now pending. Therefore the motion to dismiss must be overruled. (Laws of 1881, ch. 126, § 2; Civil Code, §§ 568–575.)

1. Divorce, procured by fraud; review.

An attorney owes to his client not only all the industry and application of which he is capable, but also, unshaken fidelity. He must be loyal in act and spirit to his client's interests. His loyalty should be unquestioned, above suspicion, and beyond reproach. An attorney not guilty of misconduct or fraud will be protected, when he acts to the best of his skill

and knowledge, and of course is not answerable for every error or mistake. He is legally responsible to his client only for the want of ordinary care and ordinary skill; but he must conduct himself with honor and integrity. While the relation of attorney and client continues, the courts will carefully and zealously scrutinize the dealings and contracts between them, and guard the client's rights against every attempt by the attorney to secure an advantage to himself at the expense of the client. The client will also be relieved from any undue consequences resulting from the dealings between the attorney and himself, whenever the good faith of the contract does not clearly appear. An attorney, therefore, when acting for his client, is bound to the most scrupulous good faith.

2. Attorney and client; good faith. If he corruptly sells out his client's interest to the other side, a judgment thus obtained will be set aside, if proper proceedings are instituted. An attorney, as an officer of the court, holds a position with many privileges, and it is the solemn duty of the court to supervise the conduct of its officers and to discountenance every malpractice and abuse. The conduct of an attorney, when brought before the court for inquiry and consideration, ought to be scrutinized with the same exacting and rigid impartiality as if the question were between mere strangers to the bar. Perhaps every act should be more scrupulously weighed.

With this statement of recognized principles, we proceed to an examination of the evidence produced upon the trial. We think this evidence shows that the attorney of John V. Haverty entered into arrangements with the attorney of Alice Haverty about the time of the trial of her divorce case of such a character as to interfere with his exclusive devotion to the trust confided to him by his client. If Alice Haverty, through her attorney, prior to the trial of the divorce case, was guilty of so influencing the attorney of John V. Haverty as to obtain an undue and an unfair advantage, and thereon the judgment was thus obtained, such judgment ought to be annulled. As was said by Mr. Justice Miller, in *United States v. Throckmorton,* 98 U. S. 61:

"Where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently and without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interests to the other side — these and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree and open the case for a new and fair hearing." (See also *Laithe v. McDonald*, 7 Kas. 254.)

If we rely upon the evidence of the attorney of Alice Haverty, it appears that $100 was paid to the attorney of her husband upon the agreement that she should take judgment in her favor and that the attorney would make no defense in the case for the husband, who was absent. This evidence is also supported by the clerk of the court, who testified that the attorney of Mr. Haverty "agreed with the attorney for Alice Haverty that if he would pay him $100, he would make no objection to his taking a decree." This clearly brings the case within the rule that "where the attorney regularly employed corruptly sells out his client's interests to the other side, the judgment will be set aside." If, however, we look to the attorney of Mr. Haverty for an explanation of the evidence of Col. Burris concerning the payment of the $100, we find this payment was made for the direct benefit of such attorney. It was applied to his own fees in the divorce case, to a livery bill in his hands for collection, and to a note on which he was surety. Haverty never received any part of the $100. His attorney made no application for a continuance, and although present in the court at the trial, did not cross-examine either of the witnesses. Perhaps if he had made a searching cross-examination he might have succeeded in defeating the divorce, although his client was absent. With his consent, the decree of divorce recites that $100 was paid by Alice Haverty as alimony. The attorney states that the $100 was paid in con-

sideration of certain improvements made by Mr. Haverty upon the place owned by his wife. Considering the evidence of this attorney, his failure to cross-examine the witnesses, the judgment rendered, we cannot say that such attorney acted in good faith towards his client. After his arrangement with Col. Burris, it was his interest that Mrs. Haverty should obtain her divorce. Thereby he realized $100. That interest was such, we think, as betrayed his judgment and endangered his fidelity. He certainly acted under a clear misapprehension of his professional duty. To such conduct we cannot give the sanction of this court. The practice of attorneys would be very impure and often fraudulent, if we permitted things of this sort to be done. Upon the evidence produced, the judgment of the trial court should have been for the annulment of the decree of divorce.

The judgment of the district court will be reversed, and the cause remanded for a new trial in accordance with the views herein expressed.

All the Justices concurring.