[Civil No. 1281.   Filed December 23, 1912.]

[128 Pac. 813.]

HELEN L. ANDRADE, Appellant, v. ALBERT F. ANDRADE, Appellee.

1. DIVORCE—APPEAL AND ERROR—STATUTES.—Revised Statutes of the United States, section 1869 (Organic Law Ariz. Ter., sec. 37), providing that writs of error and appeal shall be allowed in all cases from final decisions of the district courts to the supreme court, is enacted within the plenary power of Congress to legislate for the territory, and allows appeals from a final decree of divorce, notwithstanding Civil Code of 1901, paragraph 1212, limiting the jurisdiction of the supreme court on appeal so as not to include an appeal from a decree of divorce.

2. DIVORCE—APPEAL AND ERROR—STATUTES—VALIDITY.—The right to appeal from a decree of divorce rendered after Arizona became a state in an action begun before that time is governed by constitution, article 6, section 4, conferring on the supreme court appellate jurisdiction in all actions, notwithstanding article 22, section 1, declaring that no rights or actions existing at the time of the admission of the state into the Union shall be affected by a change of the former government.

3. JUDGES—POWERS—FINDINGS AT CHAMBERS.—Under Laws of 1907, chapter 74, section 4, providing that the court only can make findings, a judge at chambers may not make special findings without notice to either side.

4. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—SCOPE.—Where the court in a suit for divorce made a general finding to the effect that plaintiff had sustained by evidence the material allegations of the complaint, assignments of error that the court erred in finding that plaintiff was a *bona fide* resident of the county in which the action was brought, and had been such for one year preceding the filing of the action, and in finding that defendant was guilty of willful desertion and cruelty, as charged by plaintiff, attacked the finding which involved the residence of plaintiff and the guilt of defendant.

5. DIVORCE—"RESIDENCE" OF PLAINTIFF.—An actual *bona fide* resident within the divorce statute is one who is in the state to reside permanently, and who at least for the time being entertains no idea of seeking a permanent home elsewhere.

6. DIVORCE—RESIDENCE OF PLAINTIFF—EVIDENCE.—Evidence *held* not to justify a finding that plaintiff, suing for divorce, had been, before the commencement of the action, an actual *bona fide* resident of the county for one year.

7. DOMICILE—RESIDENCE.—Abiding in a place for a definite time until the accomplishment of a specified purpose, unaccompanied by any intention to remain permanently or indefinitely, is not sufficient to give one a statutory residence.

8. DIVORCE—"DESERTION"—ACTS CONSTITUTING.—"Desertion," to justify a divorce, is a voluntary separation of one spouse from the other for a statutory time without the latter's consent, without justification, and with the intention of not returning; but mere separation is not desertion, and a spouse, suing for desertion, must show that he has not acquiesced in the separation and accepted it as satisfactory.

9. DIVORCE—DESERTION—ACTS CONSTITUTING.—Where a husband and wife separated, after executing instruments reciting that he would permit her to live where she pleased and that she would not interfere with him, the separation did not amount to desertion as a ground for divorce.

10. DIVORCE—GROUNDS—CRUELTY.—A husband, obtaining a divorce void-able at the election of the wife, may not rely on acts of cruelty committed by the wife during the decree and before its vacation as a ground for divorce.

11. APPEAL AND ERROR — QUESTIONS REVIEWABLE — ASSIGNMENTS OF ERROR.—In the absence of an assignment of error to a ruling of the trial court on an issue before it, the ruling will not be considered on appeal.

APPEAL from a judgment of the Superior Court of the County of Yuma. Frank Baxter, Judge. Reversed.

The facts are stated in the opinion.

Mr. Thomas Fitch, Mr. H. T. Morrow and Mr. John H. Campbell, for Appellant.

Mr. Peter T. Robertson and Mr. Peyton H. Moore, for Appellee.

ROSS, J.—The appellee, plaintiff below, in his original complaint charged the appellant, defendant below, with desertion, cruelty and adultery. From the amended complaint the adultery charge was eliminated. The appellant's answer denied the allegations of desertion and cruelty, and denied that appellee was a resident of Yuma county, Arizona; averred that on October 5, 1910, appellee in the district court of Yuma county, Arizona, through fraud, obtained a decree of divorce from appellant, which subsisted and was in force until October, 1911, when it was vacated and set aside because of said fraud. By way of recrimination and as an affirmative defense, appellant charged the appellee with adultery with divers persons and with cruelty in charging her with adultery in his original complaint. She averred a willingness to live with appellee, and averred that she was conscientiously opposed to a divorce. She asked for separate maintenance, for one-half of appellee's income, and for costs and expenses of this action and reasonable attorney's fee. The appellee was granted a decree of divorce, and appellant was denied any relief. From this decree, and the order overruling the motion for a new trial, this appeal is taken.

The appellee makes the point that this case is not appeal-able, asserting that it does not fall within the terms of para-

graph 1212 of the Revised Statutes of Arizona of 1901, which reads as follows: "1212. (Sec. 3.) The supreme court shall have jurisdiction to review, upon appeal or other proceedings provided by law, the judgments of the district courts: 1. When the matter in dispute exceeds one hundred dollars. 2. When the legality of any tax, toll or impost or municipal fine, or the validity of any statute is in question. 3. In all criminal cases amounting to a felony. 4. When the possession or title of lands or tenements is in controversy."

If it was the intention of the lawmakers by this language to deprive the supreme court of jurisdiction of appeals in divorce cases, the attempt was futile, as being in conflict with section 1869, Revised Statutes of the United States (Organic Law Ariz. Ter., sec. 37). That section provides: "Writs of error, bills of exception, and appeals shall be allowed, in all cases, from the final decisions of the district courts to the supreme court of all territories, respectively, under such regulations as may be prescribed by law, but in no case removed to the supreme court, shall trial by jury be allowed in that court." The Congress had plenary power to legislate for the territory of Arizona, and it is plainly shown by the language used that the supreme court of the territory of Arizona was given jurisdiction on appeal or writ of error "in all cases from the final decisions of the district courts."

In *Smith* v. *Wheeler*, 4 Okl. 138, 44 Pac. 203, the supreme court of the territory of Oklahoma, after quoting the above section and a law of the legislature of that territory attempting to limit the right of appeal in cases exceeding one hundred dollars, exclusive of costs, at page 204 of 44 Pac. (4 Okl. 140), said: "Now, the judgment appealed from is a final decision of one of the district courts which are provided for by the organic act, and all the power the legislature has in the premises is to make regulations for taking such appeals. And the right to regulate the manner of taking such appeals does not give the legislature the right to deny them."

The territory of Arizona became the state of Arizona on February 14, 1912, and after the institution of this suit, but before the trial. Were it a fact that no appeal laid under the territorial laws, this appeal, having been taken after statehood, is to be governed by the constitution. Section 4, article 6, provides: ". . . It [the supreme court] shall have appellate

jurisdiction in all actions and proceedings, but its appellate jurisdiction shall not extend to civil actions at law for recovery of money or personal property where the original amount in controversy, or the value of the property, does not exceed the sum of two hundred dollars, unless the action involves the validity of a tax, impost, assessment, toll, municipal fine, or statute.''

The appellee's contention is that, the action having been begun before the territory became a state, it must be finally determined in accordance with the territorial laws. Reliance for this position is had on section 1, article 22, of the constitution, wherein it is provided that ''no rights, actions, suits, proceedings, contracts, claims, or demands, existing at the time of the admission of this state into the Union, shall be affected by a change in the form of government, from Territorial to State, but all shall continue as if no change had taken place. . . .''

In *Independent Cotton Oil Co.* v. *Beacham,* 31 Okl. 384, 120 Pac. 969, a similar contention was made, and the supreme court of Oklahoma, whose constitutional provision was practically the same as ours, said: ''We cannot agree with counsel. The rule is that no person has a vested right in any particular mode of procedure, and if, before the trial of the cause, a new law of procedure goes into effect, it governs, unless the statute itself provides otherwise.''

In *Cusic* v. *Douglas et al.,* 3 Kan. 123, 87 Am. Dec. 458, it is said: ''It certainly was not the intention to provide that no change of remedy which might be adopted under the constitution should apply to the enforcement of a contract made or judgment rendered before its adoption. Such a construction would operate to keep in force laws flatly repugnant to the constitution itself, and such laws are by direct implication repealed by that instrument.'' *Kelly* v. *Larkin,* 47 Cal. 58; *Boise Irr. Co.* v. *Stewart,* 10 Idaho, 38, 77 Pac. 25, 321; *Roenfeldt* v. *St. Louis & S. R. Co.,* 180 Mo. 554, 79 S. W. 706; *Marion* v. *State,* 20 Neb. 233, 57 Am. Rep. 825, 29 N. W. 911; *Hallock* v. *United States,* 185 Fed. 417, 107 C. C. A. 487.

It is clear to our minds that the constitution gives the right of appeal, and we hold that the case is properly before us both under the laws of the territory and the state.

As we feel compelled to reverse this case, we do not deem it necessary to pass upon the first two assignments of error as to the rejection of evidence. The assigned errors we shall consider are: (1) The court erred in finding that the plaintiff is a *bona fide* resident of Yuma county, Arizona, and had been such for one year preceding the filing of this action. (2) The court erred in holding that defendant was guilty of willful desertion. (3) The court erred in finding the defendant guilty of cruelty.

Before or at the time of the entry of the decree of divorce the court made a general finding to the effect that plaintiff has sustained by evidence all of the material allegations of the complaint. Some time thereafter, without notice to either side, the judge at his chambers made special findings. We agree with appellee that these special findings are not properly before us. Only the court can make findings. Laws 1907, c. 74, sec. 4, p. 123; *Kahn* v. *Central Smelting Co.,* 102 U. S. 641, 26 L. Ed. 266; *Wachsmuth* v. *Orient I. Co.,* 49 Neb. 590, 68 N. W. 935

The general finding of the court necessarily comprehended a finding that the plaintiff was an actual *bona fide* resident, and had been such for one year prior to the commencement of the action, that the defendant was guilty of willful desertion and cruelty, and that finding, therefore, affords a basis for the above assignments of error.

In *Sneed* v. *Sneed, ante,* p. 17, 123 Pac. 312, this court, in considering the residence necessary to entitle one to maintain divorce proceedings, said: "We conclude that 'an actual *bona fide* resident' means a person who is in Arizona to reside permanently, and who, at least for the time being, entertains no idea of having or seeking a permanent home elsewhere." Tested by this rule, does the evidence in this case justify a finding that the appellee had been, before the commencement of his action, an actual *bona fide* resident of Yuma county, Arizona, for one year?

Appellee and appellant were married in Texas in 1895. Since that time they have resided in San Francisco, Los Angeles and Mexico City. Much of the time they have from necessity, rather than choice, it seems, been separated. Of the two years that appellee was in Mexico City, the appellant remained in San Francisco most of the time, and on

account of their financial needs worked to maintain herself. In 1904 they returned to Los Angeles, where appellant remained until 1908. The appellee secured employment as assistant manager of the Inter-California Railroad Company in June or July, 1904, at Calexico, California, and Mexicali, Mexico, but because of the unsettled condition of affairs out there his wife remained in Los Angeles, he visiting her at intervals of ten days or two weeks, until 1908, when she moved to Calexico. In the meantime, appellee had bought some land at Calexico, which he caused to be deeded to appellant. In 1909 a dwelling was built on this land, and appellant, in the absence of appellee, moved their furniture and effects from the hotel to this place. About that time they had trouble, caused, as appellee affirms, because his wife wrongfully accused him of taking another woman to a bull fight; and appellant assigns as reason for trouble the discovery by her of a clandestine correspondence between her husband and two other women. As a result of this trouble appellant left Calexico for Los Angeles, where she has resided since. She returned to Calexico on short visits during the latter part of 1909 and 1910.

The testimony is in conflict as to whether their marital relations were kept up on these visits during 1909; she maintaining they were until in October, while he says they ceased in May, of 1909. Appellee says he established his residence in Yuma, Arizona, in June, 1909; that prior to that time he resided in both Calexico and Mexicali. Appellee wrote to appellant in September, dating and posting his letters from Calexico. They met during the latter part of 1909 and 1910 at both Calexico and Los Angeles, and nothing was said in either conversation or letters about a change of residence on his part. Appellee's witness Verdugo testified that "he has lived here ever since I met him" (two and one-half years). "His business is somewhat transitory, I understand. I live about two blocks from Mr. Andrade. I have seen him two or three times a month." Witness Redondo testified: "Mr. Andrade lives here in Yuma; has lived here since about May, 1909; has lived here continuously since that time. He came with the intention of establishing a business here for the purpose of opening up his lands, and he established it, and I got in with him as his assistant. We have

XIV Ariz.—25

had a regular office, and do a brokerage and land business.''
And, speaking of Mr. Andrade's home in Yuma, he said:
''I have known Mr. Andrade to sleep in the little house he
first occupied in 1910. He at times stopped at the hotel for
the purpose of being called in the morning; but his clothing
was always at the house. He always got a room at the hotel
for the purpose of being called early to go back to Los An-
geles. Sometimes he would stay overnight, and sometimes
two or three days." Sanguinetti's testimony was, in sub-
stance, the same as Redondo's.

It is strikingly significant, in connection with this testi-
mony, that appellee on June 16, 1910; filed a complaint
in the district court of Yuma county, Arizona, against appel-
lant, charging her with willful desertion, alleging the deser-
tion as of the —— day of April, 1909. Constructive ser-
vice of summons was had based on the affidavit of appellee
that he did not know where the appellant resided, notwith-
standing he had frequently met his wife in Los Angeles and
talked with her during 1910. Whatever other motives may
have moved him to keep secret from his wife this proceeding
for a divorce, it is evident that he wished to avoid a contest
on the question of residence, or desertion, or both. His in-
frequent visits to Yuma may have convinced his witnesses
that he ''resided'' there; but we do not think it measures
up to the law's definition of residence sufficiently to entitle
him to sue for a divorce. Appellee does not state that he
had gone to Yuma to remain permanently, but for a tem-
porary purpose, to wit, to build a railroad and overlook some
Mexican land. His witnesses shed no light on his intentions
in going to Yuma beyond that.

''Abiding in a place for a definite time, until the ac-
complishment of a certain purpose, unaccompanied by any
intention to remain permanently or indefinitely, is not suffi-
cient to give a person a statutory residence." Note to *Bech-
tel* v. *Bechtel*, 12 L. R. A., N. S., 1101. In addition to his
duties as assistant manager of the railroad in Calexico, the
appellee had other exacting responsibilities in Calexico in
real estate brokerage, and as president or vice-president of
the American Colony Cotton Company. Indeed, his interests
demanded that he remain at Calexico, and we conclude that

his residence at Yuma was simulated for the sole purpose of instituting divorce proceedings.

At the time of the trouble between the spouses, in May or June, 1909, or very soon thereafter, they signed and interchanged the following instruments:

"Calexico, Nov. 12th, 1909.

"This is to certify that my wife, Helen Louise Andrade, can live wherever she pleases and do just as she pleases, and I promise her actions will never be grounds for divorce.

"ALBERT F. ANDRADE."

"Calexico, Nov. 12th, 1909.

"This is to certify that Helen Louise Andrade, wife of Albert F. Andrade, agrees that in future she will not interfere with the actions of her husband in any manner, and allows him to live as he pleases, without objecting to same or molest him in any manner."

Appellee says he signed the above paper at the solicitation of the appellant; that he did not want to sign it, but did it to save trouble. The second instrument, appellant says, is a copy of the paper she signed and gave appellee. The parties evidently construed these agreements as meaning each should go his way and do as he pleased, without objection from the other. They accordingly have not lived together since. While the agreement could have no legal effect on the marital relations, as being against public policy, still neither party, without first repudiating its terms and offering in good faith to resume the performance of the marriage vows, could use the time of their separation under it as a ground of willful desertion. Where both parties consent to living apart, it would not be desertion, willful or otherwise.

In *Luper* v. *Luper* (Or.), 96 Pac. 1099, at page 1101, it is said: "Desertion or abandonment consists in the voluntary separation of one spouse from the other for the prescribed time, without the latter's consent, without justification, and with the intention of not returning. 14 Cyc. 611; *Ogilvie* v. *Ogilvie,* 37 Or. 171–180, 61 Pac. 627; *Sisemore* v. *Sisemore,* 17 Or. 542, 21 Pac. 820. Mere separation is not desertion: *Burk* v. *Burk,* 21 W. Va. 445; *Ingersoll* v. *Ingersoll,* 49 Pa. 249, 88 Am. Dec. 500; *Middleton* v. *Middleton,* 187 Pa. 612, 41 Atl. 291. Desertion must be a continued absence against the other's sincere desire, and it must be shown that he has

not acquiesced in the separation and accepted it as satisfactory. *Olcott* v. *Olcott* (N. J. Ch.), 26 Atl. 469. 'It has been firmly established by the decisions that if, either expressly or by implication from the circumstances, the complainant consents to the original separation, or to its continuance, and that consent is not revoked, there is no such desertion as warrants a divorce.' 14 Cyc. 616.''

In the note to *Hill* v. *Hill* (62 Fla. 493, 56 South. 941), in 39 L. R. A., N. S., at page 1121, the law is stated to be: ''A voluntary separation does not amount to desertion, nor can desertion be inferred from the mere unaided fact that the parties do not live together. To establish a case of desertion, it should appear that the wife left her husband of her own accord, without his consent, and against his will, or that she obstinately refused to return, without just cause, upon his request; and therefore, where the parties are living apart under articles of separation, or where the husband assents either expressly or by implication to the separation, or to the wife's continued absence, he will not be entitled to a divorce until he has revoked that consent by seeking a reconciliation, by something more than a mere request for her return, unaccompanied by an offer in any sense of protection, maintenance, or a home, or a manifestation of any sincere desire to reinstate her to the conjugal relation.''

The evidence likewise fails to sustain the charge of cruelty. The particular acts of cruelty alleged in the complaint, and attempted to be proved, are, first, on May 25, 1911, at Calexico; and, second, on August 11, 1911, at Los Angeles. What the appellant did at Calexico was to ask the appellee for her monthly allowance at his office, which happened to be in the postoffice building. Patrons of the postoffice saw and heard them talking, but did not understand what was being said. In Los Angeles appellant was standing on the street talking to Mr. Olivera, when appellee approached them and said something. As to what was said the witnesses present differ. Olivera says: ''Mrs. Andrade asked Mr. Andrade if he wanted to see her, and Mr. Andrade said he was through with being bluffed, or something like that, and just then Mrs. Andrade hauled off and hit him.'' According to this witness she struck appellee a second time before Mr. Andrade got away.

We have stated what took place in the most unfavorable light to appellee shown by the testimony. The trouble could have been avoided by appellee by keeping away from appellant. He sought the appellant, and opened the conversation. At both these times a decree of divorce obtained at his instance was in force. This divorce was only voidable. It was subsequently, on motion, set aside for fraud. But during the time of its existence the appellant's personal rights and conduct were not impressed with marital restrictions and obligations. He was asserting that appellant was not his wife at these times; but, now, for the purpose of this divorce suit, he is insisting that she was his wife, and bound to love and cherish him. We cannot give our assent to this reasoning. It was wrong for appellant to strike appellee as she did; but we feel that it is no ground for divorce, inasmuch as the marital status was at the time dissolved at the instance and wrongdoing of appellee, and this nonmarital status continued until the fraudulent decree of divorce was thereafter set aside.

The appellant asks this court to allow her attorney's fees. This was an issue in the trial court, but no assignment of error because of its disallowance was made on appeal. We cannot, therefore, consider that question here.

The decree of the trial court is reversed, and the case is remanded to that court, with instructions to dismiss the complaint.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

---

NOTE.—As to desertion as ground for divorce, see note in 138 Am. St. Rep. 146.

As to right of wife to require separate domicile after abandonment of marriage relation, see note in Ann. Cas. 1912D, 397.

As to meaning of "place of abode," see note in Ann. Cas. 1912C, 282.

As to cruelty as ground for divorce, see note in 65 Am. St. Rep. 69.