[Civil No. 1886.   Filed December 10, 1921.]

[202 Pac. 397.]

# NATHAN LEEKER, Appellant, v. DORA KATZ LEEKER, Appellee.

1. NEW TRIAL—MOTION NOT FILED WITHIN TEN DAYS AFTER RENDITION OF JUDGMENT NOT CONSIDERED.—A motion for new trial under Civil Code of 1913, paragraph 584, not filed until ten days after rendition of judgment as required by paragraph 590, will not be considered.

2. JUDGMENT — ORDER VACATING OR MODIFYING JUDGMENT MUST BE MADE WITHIN SIX MONTHS AFTER ENTRY THEREOF.—Under Civil Code of 1913, paragraph 600, providing that the court may at "any time within six months after the making or entry, of any judgment . . . for good cause shown, modify or set aside its judgments," the court's order modifying or setting aside the judgment must be made within the six months, it being insufficient that the motion be made within such period in view of paragraph 599.

3. JUDGMENT—INNOCENT PARTY WHO HAS SUFFERED BY REASON OF FRAUD IN OBTAINING JUDGMENT MAY ORDINARILY SECURE RELIEF.—Generally, an innocent party who has suffered by reason of fraud

in obtaining a judgment may ordinarily, by acting promptly in accordance with the forms of the law, and before any rights of third persons are involved, secure relief therefrom.

4. DIVORCE—COURT HAS COMMON-LAW POWER TO SET ASIDE DECREE OBTAINED BY FRAUD.—The court has the common-law power to set aside divorce decrees procured by fraud on motion of the innocent party.

5. DIVORCE—DECREE PROCURED BY FRAUD PROPERLY SET ASIDE.—Where a wife employed attorneys to sue for separate maintenance, and to secure a property settlement, but instructed them that in no event should a divorce be obtained, and where the attorneys, in violation of instructions, failed to interpose a good defense in the husband's counter action for divorce, thereby permitting the husband to procure a divorce in order to obtain amount allowed them as attorneys' fees in property settlement entered into with husband, conditioned on divorce being granted, and where the wife, because of inability to speak the English language properly, and because of her hysterical condition, was ignorant thereof, the court had the common-law power to set aside for fraud the divorce decree granted the husband on the wife's motion therefor made within six months after entry, notwithstanding order was not made within the six months as required by Civil Code of 1913, paragraph 600.

6. APPEAL AND ERROR—FINDINGS NOT DISTURBED MERELY BECAUSE SUPREME COURT MIGHT HAVE COME TO DIFFERENT CONCLUSION.—The Supreme Court will not disturb the findings of the trial court merely because, on reading the record, it might have come to a different conclusion.

7. DIVORCE—DECREE SET ASIDE FOR FRAUD NOTWITHSTANDING WIFE'S ACCEPTANCE OF HER SHARE OF COMMUNITY PROPERTY THEREUNDER.—The mere fact that the wife accepted the share of the community property given her by the divorce decree did not preclude her from having decree set aside for fraud.

APPEAL from a judgment of the Superior Court of the County of Santa Cruz. A. C. Lockwood, Judge. Affirmed.

### STATEMENT OF FACTS.

On April 24, 1919, plaintiff commenced an action, by her attorneys, Leslie C. Hardy and James D. Andrews, in the superior court of Santa Cruz county,

---

5. Validity and effect of divorce as affected by representation of both parties by the same attorney, note, 16 A. L. R. 427.

Arizona, against the defendant, for an absolute divorce, for the custody of the issue of their marriage, to wit, two sons, Abraham and Henry, aged twenty and eighteen years, respectively, for a division of the community property, and for support for herself and minor children, attorneys' fees, and necessary expenses. Adultery with one Sarah Goldner at the town of Nogales, the cities of Kansas City and New York, at different times, was the alleged ground for divorce. To this complaint the defendant answered, denying the allegations of his infidelity; at the same time he filed a cross-complaint charging the plaintiff with cruelty and desertion, and asked for an absolute divorce. The plaintiff, in reply to the answer and cross-complaint of defendant, alleged that since the filing of her complaint the plaintiff and defendant had entered into a contract for the division of their community property, and that the defendant had paid to the plaintiff the sum of $500 on May 12, 1919, and several lesser sums for the use of the minor children. She denied the charges of cruelty and desertion. In November, 1919, the plaintiff's attorneys dismissed her complaint, and thereafter the case stood upon the defendant's cross-complaint and plaintiff's reply thereto. The case came on for trial on January 6, 1920, plaintiff being represented by Leslie C. Hardy, of Nogales, and James A. Beha, of New York City, James D. Andrews, her other attorney, also of New York City, not being present at this trial. Both the plaintiff and defendant were personally present, and submitted evidence upon the issues joined, and thereafter the court made findings of fact and entered thereon a judgment in favor of the defendant granting him a divorce on the ground of excessive cruelty, and, upon the stipulation of counsel for the plaintiff and defendant as to the division of the community property, entered judgment that the defendant pay to

the plaintiff the sum of $21,022, and that defendant pay to the attorneys for plaintiff, as attorneys' fees, court costs, and expenses, the further sum of $3,650, the said sums to be plaintiff's full share of the community property. The custody of the minor children was awarded to plaintiff, the decree providing that the defendant should pay for their board and clothing and education during their minority. This decree was entered on the sixth day of January, 1920. On January 16, 1920, the defendant paid to Leslie C. Hardy, as attorney for plaintiff, the full sum of $24,672, taking his receipt therefor. Of this amount, $21,022, Mr. Hardy deposited to the plaintiff's credit in the First National Bank of Nogales.

On February 25, 1920, the plaintiff, having theretofore discharged the attorneys who had represented her up to and during the trial, filed by and through new attorneys a paper in the following words:

"Comes now Dora Katz Leeker, . . . and moves the court to relieve her from the judgment, order, and decree of divorce rendered against her in the above-entitled action on the 6th day of January, 1920, and to set aside and vacate said judgment, order and decree, and to reopen the said action, and to permit plaintiff to amend her pleadings in said action so as to present the real merits of said cause, and to have a trial thereon. This motion is based upon the affidavits of plaintiff herein and Henry Leeker, which affidavits are hereto attached, marked Exhibits A and B, and made a part hereof."

The affidavits charged fraud, trickery, and deceit upon the part of plaintiff's attorneys. A hearing was had on this motion April 20, 1920, upon affidavits and oral testimony. Thereafter, on July 15, 1920, the court granted the motion and ordered the judgment rendered on January 6, 1920, to be vacated and set aside. This decision of the court was rendered in his chambers at Tombstone, and transmitted to the plain-

tiff's and defendant's counsel through the mail, as provided by paragraph 346 of the Civil Code. Plaintiff's attorneys received this notice through the post-office on July 16th, and on July 17th the plaintiff drew her check on the First National Bank of Nogales for $21,000, which was paid. Thereafter, on September 8th, under the order of the court, she redeposited $17,450 of said money to the order of the clerk of the court, leaving with the plaintiff $3,500 as temporary alimony allowed her between April 1, 1919, and October 1, 1920.

On the motion to vacate the judgment of January 6, 1920, the court made findings of fact. Before stating the substance of such findings it should be known that plaintiff, while sojourning in the city of New York, first became acquainted with the defendant's infidelity, and consulted, while a subtenant of his, James D. Andrews, an attorney of that city, as to what she should do in the premises; that she then employed said Andrews, who, together with James A. Beha, became her regular counsel up to the conclusion of the trial, while Leslie C. Hardy represented her as her local attorney. The court found as facts that Hardy relied wholly upon the representations and instructions made and given to him by plaintiff's New York attorneys, and that he followed such instructions, believing that in so doing he was following the instructions of plaintiff; that, owing to plaintiff's inability to speak English intelligently, he was unable to converse with her; that his entire conduct was clearly ethical in every way, and that as local attorney he performed fully all duties incumbent upon him as officer of the court and one of the attorneys for plaintiff. The court's findings also exempt defendant's attorney of any unprofessional or unethical practices or conduct.

With reference to the New York attorneys, Andrews and Beha, the findings are in effect that they tricked

and deceived the plaintiff in this, that, notwithstanding she had instructed them that in no event should the marriage relation be dissolved or a divorce granted, they proceeded to Nogales and instituted a suit for divorce; that their employment was to secure a property settlement for the plaintiff from the defendant, and to secure her half of the community property, and, if possible, a separation or a separate maintenance from the defendant; that after bringing said suit her said attorney Andrews proceeded to draw up a property settlement contract contemplating the payment of part of the community property to plaintiff and payment of large attorneys' fees to her New York attorneys; that said contract for the division of property was so worded that the defendant could reasonably contend that no money need be paid the plaintiff or to her attorneys as attorneys' fees unless an absolute decree of divorce was entered; that such was thereafter the contention of defendant and his attorneys, and that plaintiff's attorneys, therefore, had a strong financial interest in failing to obey plaintiff's instructions, and in desiring the dissolution of the marriage between the parties; that said New York attorneys dismissed the plaintiff's complaint charging the defendant with adultery, and failed and refused to amend their pleadings so as to make the same an issue, and thereby took the question of defendant's infidelity away from the court, so that no evidence thereof could be offered or taken, and placed themselves in a position where they could only introduce evidence to refute whatever charges were made by the defendant instead of being able to affirmatively show the failure of defendant to observe his marriage vows.

The court further found that, owing to plaintiff's inability to speak the English language properly, and the hysterical condition in which she was, and also owing to her mental frame of mind, she was unable to

fully advise the court of what was transpiring, and of the failure of her counsel to present her side of the case to the court; that the plaintiff requested the said Beha to urge upon the court matters in her defense and in general to take a more active part in the trial; that this communication, as all others made to the said Beha, was made in German or broken English, and was not intelligible to the court. Beha represented to the court that the remarks of the plaintiff were solely urging him to put in evidence the conduct of the defendant with Sarah Goldner; that Beha advised the court he did not wish to amend his pleadings as to permit such evidence to be introduced. The court in passing upon the motion stated as conclusions of law:

"If the findings made by the court are true, plaintiff, who desired separate maintenance, but who strenuously opposed at all times a divorce, through the fault of her New York attorneys, and through their deliberate fraud upon her, and on the court, had judgment against her when she had a defense which, if proved, would have prevented the divorce. Furthermore, in view of the findings, plaintiff was in no wise at fault considering her lack of knowledge of the English language, but did her best at all times to prevent said divorce and to cause her said defense to be presented to the court."

Mr. Frank J. Barry, for Appellant.

Messrs. Duffy & Purdum and Mr. Duane Bird, for Appellee.

ROSS, C. J. (After Stating the Facts as Above.) The appellant, who was the defendant below, appeals from the order granting a motion to vacate and set aside the judgment and the court's refusal to vacate the order setting aside the judgment. The appellant makes twenty assignments of error, covering four or five propositions. He first contends that the motion

to vacate the judgment, not having been filed within ten days after the rendition thereof, came too late, and that the court had no power to grant the motion under the provisions of the statute regulating motions for new trial.

A party against whom judgment has been rendered must pursue one of the modes provided by statute, if he feels himself aggrieved, to have it modified, vacated, or set aside, and he must do so within the time, and in the manner, stipulated in the law. The motion in this case cannot perform the functions or confer the rights of a motion for new trial, as it was not filed within ten days after the rendition of judgment. Paragraph 590, Civ. Code; *Allan* v. *Allan,* 21 Ariz. 70, 185 Pac. 539; *Red Rover Copper Co.* v. *Hillis,* 21 Ariz. 87, 185 Pac. 641; *Peer* v. *O'Brien,* 21 Ariz. 106, 185 Pac. 644; *Daggs* v. *Howard Sheep Co.,* 16 Ariz. 283, 145 Pac. 140; *Chenoweth* v. *Prewett,* 17 Ariz. 400, 153 Pac. 420.

The motion was filed on the fiftieth day after the judgment was rendered, and within the time fixed in paragraph 600, Civil Code. But it was not passed upon by the court until some days after the expiration of six months from the rendition of the judgment. Granting that the causes set forth in motion to vacate, and found by the court to exist, constitute "good cause shown" it is insisted by appellant that the court, at the time the order was made setting aside and vacating the judgment, had lost jurisdiction to act, and that the order was therefore void. It is the contention that, not only should the motion to vacate the judgment under paragraph 600 be made within six months after the making or entry of judgment, but the order sustaining such motion should be made within the six months. This, it is claimed, is the meaning and sense of the statute, and appellant, to sustain such a contention, cites the following cases: *Sargent* v. *Kindred,* 5 N. D. 472, 67 N. W. 826; *Nick-*

23 Ariz.—12

*lin* v. *Robertson,* 28 Or. 278, 52 Am. St. Rep. 795, 42 Pac. 993; *McKnight* v. *Livingston,* 46 Wis. 356, 1 N. W. 14; *Granse* v. *Frings,* 46 Minn. 352, 49 N. W. 60. These cases certainly support that view.

The language employed in paragraph 600 has reference to the time within which the court may modify or vacate the judgment, and not to the time its jurisdiction is invoked to do so. It says:

"The court may [at] any time within six months after the making or entry of any judgment . . . for good cause shown, modify or set aside its judgments. . . . "

The preceding paragraph, 599, authorizes the court to extend or enlarge the time within which certain things may be done but provides that in no event shall the time in which to take or perfect an appeal in a civil action be extended. The two paragraphs, 599 and 600, make up chapter 20, title 6, to the Civil Code. They are quite as intimately related to each other as if they were but one paragraph or section. Indeed they were taken from section 7786, General Statutes of Minnesota of 1913, with but slight changes.

If a court may hold a motion to modify or vacate a judgment for more than six months before passing upon the same, he may do what paragraph 599 expressly, and what paragraph 600 impliedly, forbids. If a party dissatisfied with a judgment against him, by filing a motion to have the same vacated, may confer jurisdiction upon the court to pass upon the same one day after the six months has expired, the jurisdiction would exist twelve months thereafter, and thus the aggrieved party could suspend the finality of the judgment indefinitely, and long beyond the period allowed by the statute in which to perfect an appeal from a judgment. In *Gallagher* v. *Irish-American Bank,* 79 Minn. 226, 81 N. W. 1057, the court had before it the same question we have here, and it was

there held that the court lost jurisdiction to pass upon the motion after the time for appeal had expired.  It was there said:

"We cannot believe that it was intended by the legislature, in the amendment referred to [par. 1786], to leave open until the limitation upon the judgment itself had run the means of reversing or setting it aside, or to effectually destroy the effect of the provision of law which limits the time within which appeals from judgments may be taken; for where a judgment that has settled questions of the highest importance could not, by reason of the limitation upon the time for appeal, be reviewed, if such a rule obtained, it could easily, upon a motion supported upon *ex parte* affidavits, be modified or set aside.  The effect of such a ruling would be practically to nullify or repeal the statutory limitation of time for taking appeals from judgments, and as a precedent result in such confusion in practice, and work such havoc to vested rights accruing under the highest judicial sanction known to the law, that we cannot approve of so obviously unjust and illogical a conclusion; and we hold that, when the effort to modify or amend the judgment in this case was made, the time to appeal having expired, it was too late to grant the relief sought."

We conclude that the legislative intent was that the motion to modify or vacate a judgment under paragraph 600, *supra*, must not only be made within the six months, but that the court's jurisdiction to pass upon the same is limited to that time.

. It is next contended by the appellant that, since the appellee has no standing as the movant for a new trial under paragraph 584, Civil Code, nor as the movant to vacate the judgment under paragraph 600, the only statutory remedies available to an aggrieved party, her motion to vacate should have been denied. The appellee's answer to this contention is that every court of record has the inherent common-law power to vacate and set aside judgments obtained through

fraud, and that this rule applies to judgments obtained in divorce as well as other cases. We think it well settled, as a general proposition, that fraud vitiates everything that it comes in contact with, and that an innocent party who has suffered thereby may, by acting promptly in accordance with the forms of the law, and before any rights of third persons are involved, ordinarily secure relief therefrom. In this case it cannot be said that the appellee was guilty of any laches. She filed her motion to vacate and set aside the judgment fifty days after the same was rendered, and long before. the expiration of the six months allowed her in which to show good cause for its vacation. 1 Black on Judgments, second edition, section 321, says:

"The power to set aside judgments for fraud or collusion, though expressly granted by statute' in many of the states, is not dependent upon legislative recognition. It is a common-law power, inherent in all courts of record, and may be exercised after the expiration of the term in which the judgment was rendered on the application of the party injured."

See Freeman on Judgments, fourth edition, section 99. The last author says:

"Even in the case of decrees of divorce they have been vacated on motion for fraud, nor have the courts hesitated to do so even after marriages have been contracted in reliance upon the fraudulent decree, and one of the parties was innocent of all complicity in or knowledge of the fraud."

See 1 Black on Judgments, section 320.

This statement of the law, we think, is generally recognized to be correct. We find it repeatedly announced in the text-books and in the cases. We think it is a salutary rule, both for the protection of the court and litigants. The difficulty is in its application. Most of the cases in which judgments have been vacated for fraud, our investigation discloses, are

cases in which the prevailing party has been guilty of the fraud. The appellant cites us to a great number of cases of that character in his brief, and he insists that the rule of the law is that, if the prevailing party has been honest and fair in the litigation, the judgment should never be vacated, even though the court may have been imposed upon or the opposite party tricked or defrauded. This proposition is not put up to us in these words, but that is its effect. The rule contended for by the appellant is doubtless the one that has generally been announced, but like all other rules it has its exceptions. It is said:

"If an attorney corruptly sells out his client's interests to the other side a judgment thus obtained may be set aside on the charge of fraud." Section 344, Black on Judgments; *United States* v. *Throckmorton*, 98 U. S. 61, 25 L. Ed. 93 (see, also, Rose's U. S. Notes).

*Haverty* v. *Haverty*, 35 Kan. 438, 11 Pac. 364, is very similar to the instant case. The attorney for the defendant acquiesced in the judgment for the plaintiff on condition that plaintiff pay into the court alimony in the sum of $100. It appeared that the defendant was not present at the trial, although he had been notified of the setting of the case. He had furnished his attorney no list of witnesses. When the case was called the attorney was not prepared to defend it. He did not cross-examine the plaintiff's witnesses. He stated that he applied the $100 in the payment of a note he had signed with the defendant as surety and a livery bill owed by defendant and the balance on his fee. The court said, after discussing the duty of an attorney to his client, and after reviewing the evidence:

"Considering the evidence of this attorney, his failure to cross-examine the witnesses, the judgment rendered, we cannot say that such attorney acted in good faith towards his client. After his arrangement with Col. Burris [plaintiff's attorney] it was his interest

that Mrs. Haverty should obtain her divorce. Thereby he realized $100. That interest was such, we think, as betrayed his judgment and endangered his fidelity. He certainly acted under a clear misapprehension of his professional duty. To such conduct we cannot give the sanction of this court. The practice of attorneys would be very impure, and possibly fraudulent, if we permitted things of this sort to be done. Upon the evidence produced, the judgment of the trial court should have been for the annulment of the decree of divorce.''

See, also, *Graham* v. *Graham,* 54 Wash. 70, 18 Ann. Cas. 999, L. R. A. 1917B, 405, 102 Pac. 891.

If it be true that the property settlement agreed upon before the case came on for trial contemplated the payment of large attorneys' fees to plaintiff's New York attorneys, contingent upon defendant's securing a divorce, it would seem that such attorney's had ''a strong financial interest'' in failing to obey plaintiff's instructions to fight divorce, and in desiring the dissolution of the marriage contract. Such interest would certainly betray their judgment and endanger their fidelity.

''An attorney owes to his client not only all the industry and application of which he is capable, but also, unshaken fidelity. He must be loyal in act and spirit to his client's interests. His loyalty should be unquestioned, above suspicion, and beyond reproach,'' says Mr. Chief Justice HORTON in the Haverty case.

If an attorney's fee is contingent upon the success of the adversary of his client, either in amount or time of payment, he is certainly not in a position to make the earnest, sincere fight for his client that the law and his duty require of him. Unfaithfulness of an attorney to his client in withdrawing from the case, or in pretending to defend his rights when in fact he so handles the case as to purposely lose it, has afforded grounds to set aside the judgment in the following cases: *Nichells* v. *Nichells,* 5 N. D. 125, 57 Am.

St. Rep. 540, 33 L. R. A. 515, 64 N. W. 73; *Pacific R. R. Co.* v. *Missouri Pac. Ry. Co.,* 111 U. S. 505, reading 520, 28 L. Ed. 498, 4 Sup. Ct. Rep. 583 (see, also, Rose's U. S. Notes).

It is next objected that the evidence submitted on the motion to vacate does not support the findings of the court. In this case we feel like following the rule that we have usually adopted. The lower court had every advantage of personal contact and observation of all the parties and was certainly in a better position to determine what the facts showed than we are. That we, from a reading of the cold record, might have come to a different conclusion, we do not feel, would justify us in substituting our judgment for that of the person the law has designated to try and determine the facts.

It is also said that, inasmuch as the appellee accepted some of the benefits of the judgment before it was set aside, she should be estopped to deny its validity. This is the invocation of the general rule. Here the property involved, however, is community property. It belongs as much to one spouse as it does to the other. The law places it in the control of the husband during coverture, and constitutes him the medium through which the other spouse and the children are to receive their support and maintenance. It seems that, whatever the appellee has received by virtue of the judgment, she would have been entitled to as one of the partners in the community, except perhaps the matter of attorneys' fees. Whatever has been consumed in carrying on this unfortunate litigation out of the community property for the appellee doubtless is offset by the expenditures in that behalf by the appellant.

The order of the court vacating and setting aside its judgment and directing a new trial is affirmed.

McALISTER and FLANIGAN, JJ., concur.