[Civil No. 3241.   Filed January 30, 1933.]

[18 Pac. (2d) 911.]

EMMA J. FRANKEL, Appellant, v. EDWARD FRANKEL, Appellee.

Mr. A. J. Eddy, for Appellant.

Mr. R. N. Campbell, for Appellee.

LOCKWOOD, J.—This is an appeal from a judgment of the superior court of Yuma county granting Edward Frankel, hereinafter called appellee, a divorce from Emma J. Frankel, hereinafter called appellant. Appellant brought the action for divorce, alleging cruelty and appellee counterclaimed setting up desertion. The court found the evidence insufficient to sustain the complaint, but that the allegation of desertion in the cross-complaint was true, and rendered judgment accordingly.

There are some six assignments of error which we will consider as seems advisable. The first is that the court erred in striking the amended complaint of the appellant in which she changed her cause of action by asking for separate maintenance instead of a divorce. In order that we can pass properly on this assignment a brief statement of the pleadings is necessary. Appellant's original complaint set up certain alleged acts of cruelty, which if true would sustain either an action for divorce or one for separate maintenance. The prayer of the complaint was that a divorce be granted and the community property divided and for alimony pending the trial and permanent alimony thereafter and attorney's fees. The amended complaint in substance sets up the same acts of cruelty, with a few minor additions, and concluded with a prayer for separate maintenance and a settlement of property rights substantially the same as that asked for in the complaint for a divorce. We think it is not necessary to decide whether or not the amended complaint should have been stricken. Plaintiff proceeded on the original complaint, offering evidence thereon, and the facts set up therein were in effect found to be untrue by the judgment of the court in favor of appellee. We must assume the trial court would have

found the same facts had the change to an action for separate maintenance been allowed, and appellant was therefore not prejudiced by the action of the court in striking the amended complaint.

The second assignment of error is in substance that the evidence was not sufficient to sustain a judgment of divorce for appellee on the ground of desertion. In order to pass upon this assignment we must consider the evidence presented by the record in as favorable a manner as it can be taken reasonably on behalf of appellee. This shows the facts to be as follows: Appellant and appellee were married in the year 1906 and lived together in Yuma until about the seventh day of September, 1930. At this time appellant decided to take a trip to Southern California, as had been her habit many times in the past. Appellee drove her as far as Indio, California, where she was met by her sister, who took her in appellee's car the rest of the way. The parties apparently were on good terms and appellee had no knowledge or belief that appellant had any intention of leaving him. During the next month she wrote him many affectionate letters and he sent her various sums of money and gifts. In the latter part of October she returned to Yuma, but not to the matrimonial domicile, and sent her attorney to appellee. The attorney stated to him that appellant intended to secure a divorce and suggested that it be arranged in an amicable manner. Appellee was very much surprised and at first objected, but finally said that, if his wife insisted, the attorney might represent both of them and the matter could be so arranged. In the latter part of October appellant filed a suit for divorce and appellee answered and cross-complained, also asking for a divorce. The matter came on for hearing about the 25th of April, 1931, and the trial court after listening to the evidence denied relief to either party. For

some time prior thereto appellant had been in a hospital, but on the 27th of April she returned to the matrimonial domicile in company with two of her friends. Appellee thereupon left the domicile and never returned there to live while appellant was there. The latter remained until the 6th of July, when she went to the coast, returning in August and again coming to the domicile of the parties. While the exact language used by the parties from time to time may be in question, there can be no doubt from the evidence that appellant, after her first divorce suit was dismissed, and long before the statutory period of desertion had run, did attempt a reconciliation and that appellee refused to accede thereto. On July 15th this action was filed. Appellee answered denying the allegations of the complaint and set up in a cross-complaint that appellant had wilfully deserted him for more than one year.

The matter came to trial before the court sitting without a jury, and on evidence substantially as we have stated above appellant was denied relief upon her original complaint and a divorce was granted appellee on his cross-complaint. No error was assigned on the action of the court denying a divorce to appellant, so we must assume she is satisfied the evidence does not entitle her to one. She does contend most strenuously, however, that on no theory of the testimony was appellee entitled to a divorce on the ground of desertion, for the reason that it appears affirmatively that even assuming she did desert him without cause on the 7th of September, 1930, that long before a year had elapsed she returned to the matrimonial domicile and offered to resume her duties as his wife, but that he not only did not endeavor to secure a reconciliation but absolutely refused to consider one.

We have discussed the law applying to a situation where the wife has deserted the husband and where

he has either before or after the separation acquiesced in such desertion, several times. The first case is that of *Andrade* v. *Andrade,* 14 Ariz. 379, 128 Pac. 813, wherein we stated as follows:

" 'Desertion must be a continued absence against the other's sincere desire, and it must be shown that he has not acquiesced in the separation and accepted it as satisfactory. . . . "It has been firmly established by the decisions that if, either expressly or by implication from the circumstances, the complainant consents to the original separation, or to its continuance, and that consent is not revoked, there is no such desertion as warrants a divorce." ' . . .

" ' 'A voluntary separation does not amount to desertion, nor can desertion be inferred from the mere unaided fact that the parties do not live together. To establish a case of desertion, it should appear that the wife left her husband of her own accord, without his consent, and against his will, or that she obstinately refused to return, without just cause, upon his request; and therefore, where the parties are living apart under articles of separation, or where the husband assents either expressly or by implication to the separation, or to the wife's continued absence, he will not be entitled to a divorce until he has revoked that consent by seeking a reconciliation. . . . ' "

The question again came before us in *Ellis* v. *Ellis,* 33 Ariz. 123, 262 Pac. 614, and we quoted the language above set forth approvingly from the Andrade case, and held that, if either at the time of the original separation or during its continuance the spouse who afterwards brings proceedings for divorce has consented to such separation and not revoked the consent, no such desertion exists as justifies a divorce, and that, when the husband attempts to secure a divorce on the grounds of his wife's desertion, it must appear not only that he did not acquiesce therein, but that he made a *bona fide* attempt to effect a reconciliation.

It is true that in the case of *Lundy* v. *Lundy*, 23 Ariz. 213, 202 Pac. 809, we affirmed the granting of a divorce to a husband who had been deserted by the wife, although she sought a reconciliation. In that case, however, the reconciliation was not sought by her until nearly seven years after the statutory year of desertion had elapsed and we held· that the offer came too late. In the present case the wife attempted a reconciliation after the desertion had existed at the most for a period of some eight months. We think that under these circumstances appellee was not entitled to a decree of divorce on the ground of desertion.

Ordinarily under these circumstances we would not discuss the other assignments of error, but there is another one which we think would necessitate a reversal even did the evidence sustain the judgment, and that is the misconduct of counsel for appellee during the trial. We have read the record carefully and we are convinced that the general conduct of counsel was such as should never be followed, even in police court practice, and certainly not tolerated by a court of record. It verged perilously near to, if it did not pass the boundary of contempt. The language and manner of his objections to appellant's testimony, the nature of his own cross-examination of appellant's witnesses, and the innuendoes which he inserted therein, his remarks and interruptions during the course of the trial were of such a nature that had it been a trial before a jury it would have been gross error for the trial court to refuse a new trial had the. verdict of the jury been in favor of appellee. Indeed, the present counsel for appellee, who did not represent him in the lower court and therefore is not responsible for the conduct of the case therein, has admitted in his brief that the conduct of his predecessor was inexcusable, and only suggested on oral

argument that the misconduct was so gross that its tendency would be to prejudice a trial judge against the party indulging in it, rather than in his favor. Ordinarily courts will hesitate to reverse a case for misconduct on the part of counsel when the issue was tried to the court rather than to a jury, but we think there are limits beyond which counsel may not be permitted to go, even in a trial to the court, and that they were reached and passed herein. It is not so much specific remarks, although there are in all conscience enough of these, but the entire atmosphere injected into the trial by counsel for appellee. It is true that counsel for appellant himself occasionally overstepped the bounds of propriety, but the record shows that was not until after he had been repeatedly goaded by counsel for appellee, and while we do not approve of, we can to some extent condone his actions.

We need consider only one other assignment of error and that is that appellant accepted certain money which was paid into court as part of the division of the community property decreed by the judgment. It is contended that one who accepts the benefit of a judgment may not appeal therefrom. Ordinarily this is true. It appears, however, from the record that appellant made a showing to the trial court that she was without money to prosecute her appeal and asked permission to accept that deposited with the clerk of the court as a result of the judgment without waiving her rights of appeal, which permission was granted. We think this was in effect an allowance to appellant of funds for an appeal from the community property, which was, as a matter of law, half hers, and under these circumstances the general rule that by accepting the money she had waived her right to appeal does not apply.

We need not consider the other assignments of error. The judgment of the superior court of Yuma county is reversed and the case remanded, with instructions to dismiss the action.

ROSS, C. J., and McALISTER, J., concur.