540 P.2d 1229
**Evelyn H. NESMITH, Appellant,**
v.
**Thomas D. NESMITH, Appellee.**
**No. 11736.**

Supreme Court of Arizona,
In Division.

Oct. 8, 1975.
Rehearing Denied Nov. 18, 1975.

Westover, Keddie & Choules, by Ted B. Bowen, Yuma, for appellant.

John G. Thomas, Phoenix, for appellee.

CAMERON, Chief Justice.

This is an appeal by Evelyn H. Nesmith from a decree of divorce. We are called upon to determine:

1. whether it was error for the trial court to grant a Brown Decree divorce in this case;

2. whether it was error for the trial court to refuse the request, made at the time of trial, for an inventory and appraisal of the marital property;

3. whether references made at trial by Thomas D. Nesmith and his counsel to an assertedly unpaid judgment, when in fact it had been satisfied, constituted fraud upon the court sufficient to require reversal of judgment; and

4. whether the trial court's division of the marital property, failure to award alimony, attorney's fees and costs, constituted such an abuse of discretion as to require reversal.

Viewing the evidence and all inferences therefrom in a light most favorable to the prevailing party, *Spector v. Spector*, 94 Ariz. 175, 382 P.2d 659 (1963), the facts essential for a determination of this matter on appeal are as follows. On 10 September 1971, Thomas D. Nesmith, hereinafter referred to as Thomas, initiated in the Superior Court of Mohave County, divorce proceedings against his wife of twenty-eight years, Evelyn H. Nesmith (hereinafter referred to as Evelyn), alleging desertion. On 1 October 1971 Evelyn answered, denied certain of Thomas' allegations, and counterclaimed for divorce alleging excesses, cruel treatment and outrages. The

matter was heard by the court on 19 June 1972. During the course of the trial several references were made to an unpaid judgment, the Craig judgment, in the amount of $1,200.00 owed by Thomas and Evelyn. There is evidence to indicate that this judgment was satisfied on 7 June 1972 some twelve days prior to the trial. Also during the course of the trial Evelyn asked for an inventory and appraisal pursuant to A.R.S. § 25–316 which was denied. At the conclusion of the trial a judgment was entered granting the parties a Brown Decree divorce, *Brown v. Brown*, 38 Ariz. 459, 300 P. 1007 (1931), without naming in whose favor it was granted and dividing the marital property. Evelyn was awarded marital property in Illinois while Thomas was given that located in Arizona. Thomas was to pay the marital debts.

From the decree of divorce Evelyn appealed, 15 September 1972, and while this appeal was pending she also asked, 6 February 1973, for a writ of coram nobis (denied by the Court of Appeals, Division One, 12 March 1973), and petitioned, 20 March 1973, for an accounting of community property and an injunction preventing disposal of community property (denied by the Court of Appeals, Division One, 3 April 1973).

On 20 July 1973 the Court of Appeals, Division One, revested jurisdiction of this matter in the Superior Court of Mohave County to permit reconsideration of the judgment in light of our opinion in *Becchelli v. Becchelli*, 109 Ariz. 229, 508 P.2d 59 (1973). On 5 October 1973 a judgment on remand was entered which essentially divided all marital property in half and held Evelyn and Thomas equally liable for all debts. After that judgment, on 8 October 1973, Evelyn moved that she be granted possession of part of the Arizona property or that in the alternative a receiver be appointed to manage the property pending appeal (denied by the Court of Appeals, Division One, 6 November 1973), and 27 March 1974 moved to accelerate disposition and to permit discovery (denied by the

Court of Appeals, Division One, 12 April 1974).

## BROWN DECREE

■■ This matter is controlled by the statute as it existed prior to 8 August 1973, the effective date of our present "no fault" divorce law. In order for a court to grant what was commonly known as a Brown Decree the parties both must have asked for a divorce, proven grounds for divorce, and presented corroborating evidence. *Jizmejian v. Jizmejian*, 16 Ariz.App. 270, 492 P.2d 1208 (1972). Here both parties asked for a divorce on the grounds recognized by A.R.S. § 25–312, the statute in effect at the time. The purpose of requiring corroboration in a divorce proceeding is to prevent collusion and where the divorce is contested and there is no evidence of collusion only slight corroboration will suffice. *Spector v. Spector*, 17 Ariz.App. 221, 496 P.2d 864 (1972); *Kennedy v. Kennedy*, 93 Ariz. 252, 379 P.2d 966 (1963). Admission of the other party can be considered corroboration. *Lundy v. Lundy*, 23 Ariz. 213, 202 P. 809 (1922).

■ There is no question that Evelyn was entitled to a decree of divorce. Evelyn contends, however, that Thomas did not introduce sufficient evidence from which the trial judge might have found that Thomas was entitled to a decree on the ground of desertion. We disagree. Testimony on the issue includes the following (Thomas in recounting the circumstances of Evelyn's departure):

> "A  Well, she was dissatisfied with the whole setup. She was dissatisfied with the amount of money she was getting and she wasn't—didn't seem to be able to think that we should live that way unless you spend more money and I didn't have the cash to spend and I couldn't do it. She just failed to be a wife. That was all; said she was unhappy."

A witness called by Thomas testified that it was "obvious" that she had left. The

couple's son, Phil, testified on direct examination:

"Q And you heard your father testify that your mother left the family residence and deserted him in—was it New Years, the day after New Years in 1969?

"A Yes, it was approximately that time.

"Q Was that the approximate date? Are you aware of this to be true of your own knowledge and belief?

"A Yes.

"Q Were you home at that time?

"A Yes.

"Q And has she come back to the family residence since?

"A She has been back, but not for overnight or anything like that. She's just stopped in."

Evelyn herself, after recounting the unhappy details of a New Year's Eve party, stated: "I walked out," and then added, "I couldn't take it any longer."

We conclude on the basis of the foregoing that there was evidence and corroboration sufficient for the trial judge to find that Evelyn deserted her husband for more than a year as the statute required.

Counsel for Evelyn, however, urges that in order for Thomas to prove desertion it was necessary to show that he had attempted a reconciliation with Evelyn. The controlling statute reads as follows:

"A divorce from the bonds of matrimony may be granted:

\* \* \* \* \* \*

"3. When either party has wilfully deserted the other for the term of one year next preceding commencement of the action."

An early case held:

"A voluntary separation does not amout to desertion, nor can desertion be inferred from the mere unaided fact that the parties do not live together. To establish a case of desertion, it should appear that the wife left her husband of her own accord, without his consent, and against his will, or that she obstinately refused to return, without just cause, upon his request; and therefore, where the parties are living apart under articles of separation, or where the husband assents either expressly or by implication to the separation, or to the wife's continued absence, he will not be entitled to a divorce until he has revoked that consent by seeking a reconciliation, \* \* \*" Andrade v. Andrade, 14 Ariz. 379, 388, 128 P. 813, 817 (1912), quoting from the note to Hill v. Hill, 62 Fla. 493, 56 So. 941, in 39 L.R.A., N.S., at page 1121.

Later in Ellis v. Ellis, 33 Ariz. 123, 262 P. 614 (1928), the Arizona Supreme Court set aside a divorce where the plaintiff consented to the separation and did not revoke the consent. The court, however, stated:

"\* \* \* It is also the general rule that, before a husband can secure a divorce on the gound of his wife's desertion, he must attempt to effect a reconciliation. \* \* \*" Ellis v. Ellis, supra, at 126–127, 262 P. at 615.

Later our Supreme Court made the following statement:

"\* \* \* if either at the time of the original separation or during its continuance the spouse who afterwards brings proceedings for divorce has consented to such separation and not revoked the consent, no such desertion exists as justifies a divorce, and that, when the husband attempts to secure a divorce on the grounds of his wife's desertion, it must appear not only that he did not acquiesce therein, but that he made a bona fide attempt to effect a reconciliation." Frankel v. Frankel, 41 Ariz. 396, 400, 18 P.2d 911, 912 (1933).

We believe that the facts in Andrade, Ellis, and Frankel, supra, stand for the proposition that when the plaintiff bringing the action for divorce based upon desertion has given consent to the separation he must show an attempt at reconciliation before he will be entitled to a divorce. These cases do not require an attempt at

reconciliation by the one who has been deserted before a divorce will be granted. We have never held that absent an initial consent to, or acquiescence in a separation, the party asserting desertion is required to attempt a reconciliation. We believe the trial court was not in error in granting the Brown Decree of divorce.

## APPOINTMENT OF RECEIVER

■ A.R.S. § 25–316 (repealed 8 August 1973) formerly read:

"At any time during an action for divorce the wife may require an inventory and appraisal of the community property and of her separate property in possession of the husband, and she may obtain an injunction restraining him from disposing of any part of such property."

In this case the request for the inventory and appraisal was not made until the time of trial. We do not believe the request was timely made and it was not error for the trial court to deny the request at that late date. Also, Evelyn admits, "In essence the judgment on remand more correctly accounts and catalogs the actual marital property of the parties, * * *," and she does not claim to have been harmed by the failure of the court to appoint a receiver. Even if error occurred, there was no prejudice. We find no error.

## CRAIG JUDGMENT

■ Evelyn next urges that the failure of Thomas and his counsel to disclose payment of the Craig judgment prior to the trial of 19 June 1972 was fraud of such nature as to require this court to reverse the judgment of the trial court. Upon remand this fact was known to all parties and the court. Even if there was fraud, there was no prejudice to Evelyn.

## DIVISION OF THE PROPERTY

The marital property of the couple in this case is difficult to value owing to the contested figures introduced and disputed by the pair. Suffice it to say it is substantial and consisted of both community and jointly held property. Following the first judgment of this matter, Evelyn complained of the division of property contained therein. This was modified by the second judgment of 5 October 1973. After this Evelyn still protests and urges that "the total circumstances of the original trial amounted to a fundamentally unfair proceeding for appellant, and an erroneous and legally defective judgment which has not been remedied by the judgment on remand."

■ As noted, two different categories of property were divided here. Joint tenancy property is to be divided equally by the trial court. *Becchelli v. Becchelli*, supra. Under A.R.S. § 25–318, as it read at the time this case was before the Superior Court, community property was to be divided in such a way "as to the court seems just and right." As we have noted on several occasions:

"Pursuant to this section, the trial court is not required to make an absolutely equal distribution of the community property as long as it does not appear that the trial court's disposition of the community estate is inequitable or unfair. In affecting a fair and equitable distribution the trial court is given a broad discretionary power and * * * only where there is a manifest abuse of that discretion will an appellate court interfere. (citations omitted)" *Wick v. Wick*, 107 Ariz. 382, 385, 489 P.2d 19, 22 (1971).

The reason for that was well stated by this court long ago:

"The lower court had every advantage of personal contact and observation of all the parties and was certainly in a better position to determine what the facts showed than we are. That we, from a reading of the cold record, might have come to a different conclusion, we do not feel, would justify us in substituting our judgment for that of the person the law has designated to try and determine the facts." *Leeker v. Leeker*, 23 Ariz. 170, 183, 202 P. 397, 401 (1921).

In the judgment on remand, the trial court simply divided all property including the community property and gave each party an undivided one-half interest. This seems to us most unfortunate as such an approach, with respect to community property, can lead to mismanagement of the property not to mention the many possibilities for added friction between two individuals who have already had many difficulties. We do not find, however, that it was an abuse of discretion so as to warrant reversal of the judgment.

Affirmed.

STRUCKMEYER, V. C. J., and HOLOHAN, J., concur.