[Filed May 3, 1889.]

## SISEMORE, Appellant, v. SISEMORE, Respondent.

Willful Desertion — Divorce. — Willful desertion is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended cohabitation, without justification either in the consent or wrongful conduct of the other.

Appeal from Jackson County.

*H. K. Hanna*, for Appellant.

*C. W. Kahler* and *H. Kelly*, for Respondent.

Strahan, J. — This is a suit for a divorce. The amended complaint contains two causes of suit. Our attention will be directed only to the first cause specified.

The material part of the amended complaint is as follows: "That about five years ago plaintiff, with his said wife and children, moved from Jackson County to Crook County, in said state of Oregon, and that plaintiff ever since and now is a resident of Crook County; that in October, 1885, the defendant returned from Crook County to her former home in Jackson County, and has ever since remained there; that ever since said last-mentioned date said defendant has willfully deserted the plaintiff, and has willfully remained away from him and their said home, and, though often requested by the plaintiff, has ever since said last-mentioned date persistently refused to return to the plaintiff or their said home, or to longer cohabit with plaintiff thereat."

These allegations were met by denials, the cause was referred, and much evidence taken on both sides. Upon a trial in the court below, the suit was dismissed, and costs adjudged against the plaintiff from which decree this appeal was taken.

1. It appears from the evidence that these parties were

married on the thirteenth day of December, 1867, in
Jackson County, Oregon; that at the time of her marriage with the plaintiff she was a widow, and the mother
of three children by her former husband. It also appears
that for some time before the final separation an estrangement grew up between these parties; but, so far as the
evidence discloses, the plaintiff was not its cause, nor did
he in any manner encourage it. Antagonism also grew
up between the plaintiff and the children of the defendant by her first marriage. The plaintiff was largely engaged in stock business, and as the range failed in Jackson
County, he was compelled to seek other range, or cease the
business. He first went to Klamath County, and then
afterwards established himself in Crook County, where
he still continues to be engaged in that business. The
defendant, for some time after the plaintiff went to Crook
County, continued to reside upon her farm in Jackson
County, where she and her first children carried on farming and stock-raising. Finally, she went with plaintiff to
his home in Crook County, and remained there with him
for some time, taking with her her younger children. In
1885, she expressed a wish to return to her former home,
in Jackson County, for the purpose of schooling the children, and the plaintiff consented to it, and brought her
and the children back. When the plaintiff again visited
them, he objected to the manner in which the defendant
was schooling the children. It seems that the plaintiff
wished the children to be regularly kept in school, but
the defendant thought there was plenty of time to school
them later. During this visit, the defendant and her
two older boys treated him very coolly. On this occasion the plaintiff wished the defendant to return to Crook
County with him. When he again came down he wanted
to know of the defendant if she was not ready to go home,
but she told him, in substance, that she had a very good

home where she was, and that she did not see any use in going up to Crook County. This was about one year after the plaintiff brought her down. It was on this occasion that the defendant proposed that the plaintiff should return to Jackson County, but the plaintiff told her he could not do it; that he had a homestead in Crook County, which was his home, and that he did not propose to come down here to live with her and the boys.

On this occasion, the plaintiff told the defendant that she did not treat him as a wife ought to treat a husband, but she informed him that she treated him better than he deserved. The plaintiff then returned to his home in Crook County, the defendant remaining on her farm in Sam's Valley. Afterwards, the plaintiff came down again, and by this time it seems the estrangement between the parties was known outside of the family circle. A protracted meeting was in progress at Grant's Pass conducted by Revs. Jones and Sails. Mr. Jones sent for the plaintiff to come to church, who went without his wife. Jones told him to go back and bring her, as he thought he could assist them in getting together. Plaintiff did so. Before going, however, plaintiff asked the defendant if she would not be willing to go back up home to Crook County. She said no; she had a good home, and she had no assurance if she went but that she would have to come back, and the boys might not want to take her in. It was about this time that defendant said to plaintiff: "We all have lost all confidence in you." The plaintiff came down again, and asked the defendant to return to Crook County with him, which she did not do, but told him she had a good home where she was, and that the society was very bad up in Crook. The next time the plaintiff came down he remained from October till March. By this time, serious business complications had arisen between the plaintiff and Horace Pelton, a son of the de-

feudant by her first husband.   The plaintiff many times during this sojourn urged the defendant to return with him to his home in Crook County, but she always put him off with some indefinite answer, and did not comply with his requests.

Other evidence tends to prove that the defendant withdrew from the plaintiff, and ceased to cohabit with him, without any cause or reason so far as appears.   Nor is there any satisfactory excuse in this record for the failure and refusal of the defendant to return with her husband, and reside with him in Crook County where he had established the home of the family.   It is true she did not directly refuse in words, but she did it by acts, which were far more decisive, and she always treated the matter evasively when approached on the subject by the plaintiff.

Do these facts, so very briefly outlined, constitute willful desertion within the meaning of the statute making it a cause for a divorce ?

1 Bishop on Marriage and Divorce, section 776, says: "Desertion in divorce law is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended cohabitation, without justification, either in the consent or wrongful conduct of the other."   In section 782 the same learned author says: "This question, as one of principle, is not without difficulty.   Still if a party to the marriage should refuse to the other party whatever lawfully belongs in marriage alone,—refuse not from consideration of health, not from any other temporary considerations, but from alienation of affection, from perverted religious notions, or from any other cause resting permanently in the will, and not in physical inability,—the refusing party would thereby withdraw from whatever relation of marriage, distinguished from every other relation subsisting between

XVII. OR.—35

human beings, is understood to imply. Therefore he should be holden to desert thereby the other."

I think enough is shown by the plaintiff to constitute willful desertion within the statute, and for that reason the decree of the court below must be reversed, and a decree entered in this court allowing the plaintiff a divorce from the defendant, but upon the express condition that the plaintiff first release all claim and interest in the wife's lands by reason of said decree, and neither party to recover cost against the other.

At this time no order will be made as to the custody of the children, other than which ever party has their custody shall make no claim on the other for their support.

The court below will have power to make orders in relation to their care and custody as occasion may require.

LORD, J., concurred in granting a divorce.