Argued ........................., decided July 28, 1908.

## LUPER *v.* LUPER.

### [96 Pac. 1099.]

DIVORCE—"DESERTION"—NECESSITY FOR CONTINUITY.

1. Though condoned cruelty or adultery is revived as a ground for divorce on a repetition of the offense, "desertion," warranting a divorce, is a breach of matrimonial duty accompanied by an intent to desert, concurrently existing in interrupted combination during at least the entire statutory period of one year and until the entry of a decree; it not being proper to join two periods of desertion to make the statutory period, however brief the period of cohabitation separating the two periods of desertion.

DIVORCE—EVIDENCE—SUFFICIENCY.

2. Evidence *held* insufficient to show that defendant deserted her husband.

DIVORCE—"DESERTION"—"ABANDONMENT."

3. "Desertion" or "abandonment," in divorce law, consists in the voluntary separation of one spouse from the other for the prescribed time, without the latter's consent, without justification, and without an intention to return.

DIVORCE—ESSENTIALS OF GROUND.

4. It is essential to desertion as a ground for divorce that the deserted one has not acquiesced in the separation and that it is against his sincere desire.

DIVORCE—ESSENTIALS OF GROUND.

5. Desertion, however willful and without reasonable cause, is no ground for divorce, unless continued for the statutory period.

DIVORCE—ESSENTIALS OF GROUND.

6. A deserted spouse cannot prevent the other from terminating the period of desertion, so as to prevent the acquisition of a ground for divorce, by refusing to resume marital relations; but, when the desertion has

---

According to date of decision, this case should have been published in 50 Or.                                     REPORTER.

continued through the statutory period, the deserted one may rely upon
his acquired right and refuse to renew cohabitation.

Divorce—Conviction of Felony—Burden of Proof.
7. In a divorce case, the burden was on cross-plaintiff to show that
cross-defendant had been convicted of a felony, entitling her to a divorce,
wherein he interposed a general denial to the cross-complaint.

Divorce—Conviction of Felony—Burden of Proof.
8. Under B. & C. Comp., Section 507, making conviction of a felony a
ground for divorce, a conviction does not afford such ground unless it has
become final by affirmance on appeal or by failure to take an appeal.

From Marion: George H. Burnett, Judge.

Statement by Mr. Commissioner Slater.

This is a suit for divorce by T. J. Luper against Lizzie
R. Luper. From a decree for defendant on her cross-
complaint, plaintiff appeals. The facts are as follows:

On July 3, 1906, plaintiff filed a complaint charging
defendant with having deserted him in December, 1904,
and praying for a divorce. Service of summons, by order
of the court based on plaintiff's affidavit, was had by
publication. Defendant not having appeared, default was
entered on September 4, 1906, and a decree granted to
plaintiff, dissolving the marriage relation theretofore
existing between them. Subsequently defendant, having
learned of the proceedings, came to this county from
Rogers, Arkansas, where she and plaintiff had formerly
resided, and caused defendant to be arrested and
informed against for perjury on two charges—one alleged
to have been committed in making the affidavit for the
order for publication of summons, and the other in
verifying the complaint charging defendant herein with
having deserted him. On November 22d defendant
applied to the equity court to vacate the decree and permit
her to answer. After the trial and conviction of plaintiff
in the circuit court on the second of the above charges,
the equity court on January 31, 1907, vacated the decree
and permitted her to answer, wherein she denied the

alleged desertion, and as a cross-complaint and for cause of divorce in her favor she set up plaintiff's conviction, which is alleged to have taken place on January 30, 1907. On February 1, 1907, by permission of the court, plaintiff filed an amended complaint, wherein the original desertion by defendant is alleged to have been committed in January, 1900, the duration thereof not being stated; but it is alleged that plaintiff from time to time received and accepted plaintiff's overtures of reconciliation until August, 1902, when she refused to receive plaintiff at their home and ordered him to leave, which he did, going to a hospital, he at the time being sick with fever; that in the month of August, 1904, plaintiff again returned to defendant at Rogers, Arkansas, with the understanding and agreement between them that she would receive him as her husband and thereafter conduct herself pleasantly and agreeably in his presence; that they lived together until December, 1904, when defendant, without cause or provocation, willfully and wrongfully deserted plaintiff, which desertion, it is alleged, continued until the date of filing the amended complaint. But it is also alleged that during the month of April, 1906, at defendant's importunity, plaintiff sent her money for the transporation of herself and their son to come to plaintiff at Jefferson, Oregon; that she did come, but not as his wife, and did not reinstate herself as such, but only to obtain money from him; and that she never intended to resume her marital relations with him, and, after remaining there about one month, went away. By stipulation the answer to the original complaint was to stand as an answer to the amended complaint, which was put at issue by a reply, containing a general denial of the averments of the cross-complaint. After a trial, defendant was granted a decree, based on plaintiff's conviction, from which the latter appeals.

REVERSED.

For appellant there was a brief with oral arguments by *Mr. William H. Holmes* and *Mr. Carey F. Martin.*

For respondent there was a brief and an oral argument by *Mr. John A. Carson.*

Opinion by MR. COMMISSIONER SLATER.

1, 2. The parties intermarried at Portland, Oregon, on February 18, 1885, and some time thereafter removed to the town of Rogers, Arkansas, where the continued to reside for a number of years. The issue of the marriage is one son, now over 20 years of age. Plaintiff is a bridge carpenter by trade, and was employed in building railroad bridges, which necessarily required his absence from home most of the time; but the evidence shows that he returned to his home about every two weeks as long as friendly relations existed between him and defendant. There have been several separations and subsequent reconciliations between the parties, since January, 1900, the date when the first desertion took place, as alleged in the amended complaint. But the contention is advanced by plaintiff's counsel that desertion by defendant has been continuou and uninterrupted from the time of the first or original desertion up to the trial, although it is admitted that at intervals the plaintiff and defendant have cohabited as husband and wife. This is upon the theory that the subsequent cohabitation was upon an implied or express understanding that defendant, in seeking a renewal of the marriage relation, was acting in good faith and promising not to repeat the offense, and that when she committed a breach of this condition the former offense was revived. This, in general terms, is the law of condonation, applicable to a cause of action for divorce arising out of a specific or single act, such as cruelty or adultery. But desertion, for which a divorce will be granted, is a breach of matrimonial duties accompanied by an intent to desert

in the mind of the offender concurrently existing in uninterrupted combination during at least the entire statutory period of one year and until the entry of a decree. 1 Bishop, Marriage, Divorce, and Separation, § 1771. The act is continuing in its nature. *Ogilvie* v. *Ogilvie*. 37 Or. 171-180 (61 Pac. 627). It must be a continuous unbroken desertion.

Two periods of desertion cannot be added together for the purpose of making up the time required by the statute. *Burk* v. *Burk,* 21 W. Va. 445. And if what the law defines a "cohabitation," however brief, transpires, the earlier and latter desertions cannot be yoked and counted in years together. 1 Bishop, Marriage, Divorce, and Seperation, § 1773. No facts are stated constituting the act or showing the intent to desert in January, 1900; but the legal conclusion alone is stated. The evidence offered by plaintiff discloses that some time during the year 1900, and while he was away from home at work, defendant disposed of the household goods, vacated the home and left for this State; that plaintiff, as soon as he was informed of that circumstance, quit his work, followed her to Oregon, brought her back, and reinstated her in their home at Rogers, Arkansas. It is not averred, nor shown, that this act of desertion continued any definite period of time; but it is admitted that it was followed by cohabitation of the parties at the instance and request of the complainant, and it is alleged, in substance, that from time to time defendant received and accepted the overtures made to defendant by plaintiff to reconcile their differences until the month of August, 1902, when plaintiff, being sick with fever, returned home from the territory of Oklahoma, where he had been working; that defendant then refused to receive plaintiff at their home and ordered him to leave, which he accordingly did, and went to a hospital for the nursing and care necessary to restore him to health. But plaintiff's own evidence,

which is all there is in proof of this latter occurrence, is hardly sufficient to sustain the averment of desertion by her, at that time. He testifies that after his arrival at the house, and while he was reclining on the lounge she said to him: "What did you come home for?" He replied: "I was sick, and came home to try to rest up a few days." She then said: "I won't wait on you. I have enough to take care of the boy. All you care for is to make me trouble." To which the plaintiff replied: " 'Very well, then I will try and not make you any more trouble.' I told her I would go back the next morning on the five o'clock, which I did. That was when I notified them (local merchants) not to give her any more credit." This language does not indicate an intention on the part of defendant to abandon the marital relationship with plaintiff, nor does it amount to a refusal to further cohabit with him as his wife. It is a threat that she will not wait on him while he is sick, and, if carried into execution, it will amount to cruel treatment. But, conceding that the remark shows an intent to desert, it was not accompanied by any act on her part by which cohabitation was severed. But, immediately upon defendant thus disclosing her aversion toward plaintiff, the latter voluntrailly offered to go away, and did go away, and enjoined the merchants of the town from furnishing goods to her on his credit. Thus the severance of cohabitation was by his act.

3. Desertion or abandonment consists in the voluntary separation of one spouse from the other for the prescribed time, without the latter's consent, without justification, and with the intention of not returning. 14 Cyc. 611; *Ogilvie* v. *Ogilvie,* 37 Or. 171-180 (61 Pac. 627) ; *Sisemore* v. *Sisemore,* 17 Or. 542 (21 Pac. 820). Mere separation is not desertion. *Burk* v. *Burk,* 21 W. Va. 445; *Engersoll* v. *Engersoll,* 49 Pa. 249 (88 Am. Dec. 500) ; *Middleton* v. *Middleton,* 187 Pa. 612 (41 Atl. 291).

4. Desertion must be a continued absence against the other's sincere desire, and it must be shown that he has not acquiesced in the seperation and accepted is as satisfactory. *Olcott* v. *Olcott,* (N. J. Ch.) 26 Atl. 469. "It has been firmly established by the decisions that if, either expressly or by implication, from the circumstances the complainant consents to the original seperation, or to its continuance, and that consent is not revoked there is no such desertion as warrants a divorce." 14 Cyc. 616. This second separation of the parties, according to the allegations of the complaint terminated in August, 1904, when plaintiff again returned to defendant, with the alleged understanding and agreement between them that she would receive him as her husband and thereafter conduct herself pleasantly and agreeably in his presence. But the case is bare of any proof to support any such agreement. In fact, there is no evidence of any kind as to what were the relations of the parties from August, 1902, to July 7, 1904. On the latter date, however, plaintiff addressed a letter postmarked Ft. Worth, Texas, to defendant, at Rogers, Arkansas, acknowledging receipt of a communication from her, the tenor of which, admitted by him in his reply, was conciliatory and asking for his return to her. There is no reference made in his reply to any previous desertion of him by defendant. The only matter of which he does complain is that she will persist against his wishes in taking in washing, to the injury of her health, and he offers to furnish her a good living if she will desist. On August 7, 1904, he again addresses her from Stroud, Oklahoma, an affectionate letter, stating, in substance, that he wishes to be with her and promising to make future arrangements so that they might be together, and letters of that character are sent by him at frequent intervals. He testifies, however: That in

the month of December he returned to his former home
after having suffered personal injuries in a railroad wreck
which necessitated his going to a hospital for a brief
time. That on his first appearance at the house defendant
said to him: "I thought you was in the hospital." And
he answered: "I was. I got out and came home to see
you. I couldn't hear from you." That she said: "You
had better have staid where you was. You had might
just as well go back, I won't wait on you here."
Plaintiff then said to defendant: "If you are not
satisfied, I will go back." She said: "No I ain't."
And plaintiff went back to where he had been working
in Oklahoma and never returned. But the defendant says
that he staid at home as long as he wanted to, and that
he was there a number of times afterwards, particularly
upon December 25th, when they had a Christmas dinner.

The facts as related by plaintiff, however, do not consti-
tute desertion on the part of defendant; but, at most, the
evidence a seperation agreeable to both. Howeve
January and February folling, plaintiff address
tionate letters to his wife, promising to go b
her, and also to look for and procure a
place. where he was working, so they m
In fact, he proposes to seek new and di
in order to be at home. This is a
with the attitude of a husband
driven from his home and deser
ent state of affairs is shown
dates of January 29th, F
May 11th, 1905. One s
in evidence, and we
from his replies wha
undoubtedly had b
a new home—w
for plaintiff

attitude of mind and intention. It is sufficient to say that, thinking she was too peremptory in her requests or demands that he should immediately buy a new home, plaintiff notifies her in these four last letters that in his opinion it is impossible for them to live peacefully together, and that he will not return to her or have anything more to do with her; that she may go her way, and he will go his. This rather indicates desertion from that time by plaintiff, and not by defendant; but, in all events, it is an express consent on his part to a separation, and leaves no basis for a decree of divorce in plaintiff's favor on the ground assigned.

5. The parties continued to live apart. Plaintiff came to Oregon and was working at his trade at the city of Jefferson, in this county, in May, 1906. Defendant sought a reconciliation, and offered to come to plaintiff, which she did upon the express understanding that she would ⁀ew the marriage relations with plaintiff in good faith. ⁀is an abundance of evidence in the record to im— ⁀good faith, and to show that her only intention ⁀ her husband at Jefferson was to procure ⁀m, which to some extent she succeeded in ⁀tiff's contention that her conduct at that ⁀aud upon him, and, that being so, he ⁀have condoned her former alleged ⁀ing cohabited with her for about ⁀mstances shown in the record. ⁀ with counsel, if it had been ⁀r desertion had previously ⁀t defendant. But the ⁀sertion by defendant ⁀ne year against the ⁀een shown. Her ⁀1900, and her ⁀of abandon-

ment accompanied by an intent to desert; but it did not continue for one year. Plaintiff, soon after, sought her and brought her back. However willful the desertion may be, and however destitute of reasonable cause, it is not ground for divorce unless it is continued for the statutory period. *Albee* v. *Albee,* 141 Ill 550 (31 N. E. 153).

6. The above case also announces the doctrine, which has been approved and followed by this court in *Ogilvie* v. *Ogilvie,* 37 Or. 171-180 (61 Pac. 627), that at any time during that period the offending party has an udoubted right to put an end to it by returning to the deserted husband or wife, by offering to return in good faith and with an honest intention to resume marital relations, and, when done, the continuity of the desertion is broken. Nor can the deserted party prevent this by refusing to receive back and to resume marital relations with the one guilty of desertion. But, when the desertion has continued through the statutory period, the deserted party may rely upon his acquired right and refuse to renew the cohabitation. 1 Bishop, Marriage, Divorce, and Separation, § 1775. The reason appears to be that the innocent party has acquired a right, a cause of action, which he is not bound to, but may, surrender, and resume marital relations upon an agreement, express or implied, with the guilty one that she is acting in good faith and will not repeat the offense; and, upon the contrary being shown, the cause of action previously existing, but which was conditionally surrendered, will be revived. Until a cause of divorce exists, the doctrine of condonation does not apply; but, as in this case, it is a question, not of condonation, but of continuity of desertion.

7. This leaves for consideration the question of defendant's claim for a decree on her cross-complaint, wherein

she alleges that on January 26, 1907, plaintiff was convicted of a felony, and on January 30, 1907, judgment was entered against him on said conviction. To this a general denial was interposed in the reply, and therefore the burden was upon defendant to sustain the charge by a preponderance of the evidence. We find no evidence in the record touching this issue; but as the parties in presenting the case have assumed that some proof was offered of the alleged conviction, we have considered it. The decree in favor of plaintiff, based on the alleged conviction of a felony, was entered on May 20, 1907, about four months from the judgment of conviction in the circuit court. It is apparent that the conviction on which the decree was based was not a final judgment, but one that was liable to be appealed and reversed. In fact, the judgment of conviction here relied upon was appealed from by the defendant in the action and was reversed by this court. *State* v. *Luper*,* 95 Pac. 811.

8. The statute (B. & C. Comp. § 507, subd. 3) authorizes the dissolution of the marriage contract at the suit of the injured party upon a conviction of felony. But it has been held by the Supreme Court of Iowa that the term "conviction of a felony," used in a similar statute of that state, refers only to a conviction which is final and absolute, either because of affirmance in the appellate court or because no appeal has been prosecuted. *Vinsant* v. *Vinsant*, 49 Iowa, 639. The facts of that case are identical with the present case, and the reasoning on which that opinion is based appears to us to be sound.

It necessarily follows that the decree must be reversed, and one entered here dismissing the complaint and cross-complaint.                                        REVERSED.

---

*This case has never been published in the Oregon Reports. REPORTER.