Argued March 4, reversed March 11, 1919.

# NUNN *v.* NUNN.

(178 Pac. 986.)

**Divorce—Desertion—Evidence—Collusion.**

1. Where wife was determined to permanently leave husband, the fact that husband, after using reasonable remonstrance and endeavoring to persuade her not to leave him, succumbed to the inevitable and allowed her to go without creating a useless scene, does not show his consent to the separation.

**Divorce—Desertion—Consent.**

2. Where wife left her husband with intention of not returning, contrary to his remonstrance, and it was reasonably certain that no persuasion could have prevented her, that the husband helped her with her trunks to the station when he found she was determined to go did not imply his consent to the separation; the act being but good manners on his part.

**Divorce—Desertion—Detention—Collusion.**

3. A husband is not required to use physical force to detain wife, or "to protest to the iron heavens against her going," in order that the separation may not be deemed collusive.

[As to connivance as a bar to divorce, see note in 120 Am. St. Rep. 520.]

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

This is a suit for divorce by E. J. Nunn against Alice Nunn. From a decree denying divorce, plaintiff appeals. Reversed, and decree entered granting divorce. REVERSED. DECREE RENDERED.

For appellant there was a brief and an oral argument by *Mr. Walter C. Winslow.*

For respondent, State of Oregon, there was a brief and an oral argument by *Mr. Max Gehlhar*, District Attorney.

McBRIDE, C. J.—This is an appeal from a decree of the Circuit Court denying plaintiff a divorce. The

suit was predicated upon a charge of willful desertion, and relief was denied by the Circuit Court upon the theory that the separation of plaintiff from defendant was by mutual consent. The defendant defaulted and the state filed no answer to the complaint. The plaintiff's testimony is undisputed and the fact that defendant left plaintiff's home and remained away for more than one year, and that she left with the avowed intention of deserting the plaintiff and never resuming marital relations, is fully established. It appears from the testimony that the defendant, a school-teacher by occupation, and a maiden about forty years of age, was married to plaintiff in Australia in 1913 and came immediately with him to this country. From the character of his testimony we infer that he was an ignorant, uncultured man, who earned his living as a laborer and a rancher, and was probably far beneath his wife in educational acquirements. They came to Marion County about 1914 and finally settled on a ranch where plaintiff pursued the vocation of farming. How he succeeded does not appear but his neighbors testify that things were apparently fairly comfortable, but evidently not to the satisfaction of the lady, who, in March, 1916, left plaintiff and went to Canada to teach school, with the avowed intention of not returning. According to plaintiff's testimony, her reason for not wishing to live with him was that she did not like country life, but wanted to live in the city and insisted on leaving home to teach school. He testified that about a year before she actually left she proposed to him to get a divorce, to which he gave her no definite answer, but finally she secured a position and announced her intention to leave the plaintiff. The circumstances occurring immediately preceding

91 Or.—25

her final departure are detailed by plaintiff, as follows:

"Q. What did she say to you about coming back?

"A. She said she didn't care how things were going, she didn't intend to come back.

"Q. What was your attitude in reference to her going away?

"A. Well, I had talked to her and told her that I didn't want her to go, but that I was doing the best I could for her and if it didn't suit her I couldn't help it. I tried to satisfy her but couldn't do it. She insisted upon going back to her profession. I told her that the money was going out and nothing coming in, and would have to wait for something to come in.

"Q. What did she say about this?

"A. Well, she was a woman that had her own way about everything. You couldn't do anything. She was headstrong, indignant.

"Q. Did you use every effort you knew how to use to keep her from going?

"A. Yes."

Plaintiff testified that he had no arrangement with defendant about a divorce, and that when she asked him in reference to it he told her she could suit herself, that when she left he supposed she would try to get a divorce; that he never told her he would get a divorce, and that there was no arrangement between them on that subject. He was asked this question by the district attorney:

"Q. You didn't object to her going if she wanted to?

"A. No, I don't want to put anything in anybody's way if they can do better."

1. Plaintiff also helped defendant take her baggage to the station when she went away. We do not think the answers made by plaintiff upon cross-examination show that the separation was mutual. It is evident

that plaintiff is an ignorant man, who is unable to express himself clearly, but the testimony indicates that he had on his hands a dissatisfied self-willed wife, who was determined to go away and never return, and that after using reasonable remonstrance, and endeavoring without avail, to persuade her not to go, he succumbed to the inevitable and allowed her to go without creating a useless scene.

2, 3. So far as persuasion went plaintiff did his part, and it was but good manners to help her with her trunks to the station when he found she was determined to go, and this act should not be construed to imply a consent to the separation. The law does not require that a man shall use physical force to detain his wife, or to protest to the iron heavens against her going, in order that the separation shall not be deemed collusive. It seems reasonably certain that no persuasion or objection on plaintiff's part would have prevented her going, and that he never consented to it, but on the contrary remonstrated against it. We think defendant's conduct falls fairly within the definition of desertion given by Mr. Justice SLATER in *Luper* v. *Luper,* 61 Or. 418 (96 Pac. 1099):

"Desertion, or abandonment, consists in the voluntary separation of one spouse from the other, for the prescribed time, without the latter's consent, without justification, and with the intention of not returning."

The defendant went after she was honestly asked to remain; she went without the intention of returning, and it is evident she will not return. Under these circumstances plaintiff ought not to be hampered in the transaction of his business, or the transfer of his real property, for the balance of his life, simply because he submitted to the inevitable like a gentleman.

The decree is reversed and one will be entered here in accordance with the prayer of the complaint.

REVERSED.   DECREE RENDERED.

BURNETT, BENSON and HARRIS, JJ., concur.