[No. 27829.  *En Banc.*  March 22, 1940.]

ELIZABETH JOHNSON, *Appellant,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 100 P. (2d) 382.

*Ballinger, Clark, Mathewson & Force,* for appellant.

*The Attorney General* and *J. A. Kavaney, Assistant,* for respondent.

ROBINSON, J.—On April 6, 1937, the appellant's then husband, Victor Johnson, a workman, was instantly killed while engaged in a hazardous occupation. In due course, his widow, Elizabeth Johnson, claimed a pension under the workmen's compensation act. The claim was rejected by the supervisor of industrial insurance, the matter reviewed by the joint board, and the rejection sustained. An appeal was taken to the superior court of King county, resulting in a judgment approving the action of the departmental authorities, and this is an appeal from that judgment.

There is no question but that the appellant would be entitled to the widow's pension provided in the act were it not for the exception found in subd. (i), Rem. Rev. Stat., § 7679 [P. C. § 3472], which reads as follows:

"A husband or wife of an injured workman, living in a state of abandonment for more than one year at the time of the injury or subsequently, shall not be a beneficiary under this act. A wife who has lived separate and apart from her husband for the period of two years and who has not, during that time, received or attempted by process of law to collect, funds for her support or maintenance, shall be deemed living in a state of abandonment."

The first sentence in the subdivision has been a part of the workmen's compensation act from the beginning. Laws of 1911, chapter 74, p. 361. The second sentence was added by chapter 310, Laws of 1927, p. 845. It provides a method, though not necessarily an exclu-

sive one, of proving the abandonment spoken of in the first sentence. This was the sole method of proof adopted; and, under the circumstances hereinbefore stated, since the department had the affirmative of the issue as to abandonment, it was required to prove, by a fair preponderance of the evidence, that (1) Mrs. Johnson had lived separate and apart from her husband for two years prior to April 6, 1937; (2) that she had received no funds for her support and maintenance during that period; and (3) had not attempted, by process of law, to collect funds for her support or maintenance during that period.

The appellant admitted that she had lived separate and apart from her husband during that period, and for a number of years prior thereto. It appears that, on July 10, 1935, which was within the two-year period, she procured the issuance of a bench warrant in cause No. 20460, in the justice court of C. E. Claypool, "for Victor Johnson for failure to comply with the order of the court." The records in that case show that Mrs. Johnson filed a complaint therein on October 29, 1930, accusing her husband of committing "the crime of abandonment and nonsupport of child," which is therein said to be of the age of twelve years. Mrs. Johnson testified that her husband was not arrested for two years or more. The record shows this to be true. He was arrested early in December, 1932, and hearing on the charge was set for December 7th. There were eight successive continuances, and the matter was not heard until January 17, 1934, at which time it was ordered and adjudged that the defendant

". . . pay the sum of $5.00 each week into the registry of this court for the support of his minor child. Said payments to begin January 20, 1934 and to continue until the further order of the court."

The docket also shows the following entries:

"October 31, 1934    Bench warrant issued.
"November 14, 1934  Parties in court—Order to stand.
"July 10, 1935      Bench warrant issued.
"July 17, 1935      Defendant in court — to resume payment — released."

Thereafter, as a page from the ledger of the justice shows, Victor Johnson paid various sums into court which were received and receipted for by the appellant, Elizabeth Johnson. During the two years immediately prior to Johnson's death, that is, after April 6, 1935, the payments were as follows: Five dollars on each of the following dates, July 2nd, July 22nd, August 13th, August 27th, September 24th, October 8th, October 29th, November 20th, December 9th, 1935, and January 7th, 23rd, February 13th, February 29th, March 1st, March 30th, April 15th, May 25th, 1936. It is clear from the evidence that Mrs. Johnson received no sums from her husband other than these, during the two-year period, and during that period caused no legal process to issue against her husband, other than the bench warrant issued in cause No. 20460 on July 10, 1935. This, says the respondent, was process issued to collect support for her daughter, and not for herself, and the sums above mentioned were received for her daughter's support, not for her own. Hence, it is said, there is clear and absolute proof of abandonment.

Mrs. Johnson testified that she believed that all of the sums received through Justice Claypool's court were paid in by her husband for the support of herself and her daughter. Passing the question as to whether or not her belief is in any way material, we find reasonable grounds in the record for thinking that her testimony is true. She testified that she went to the prosecuting attorney in 1927 to obtain support for

herself and her child; that he got a promise out of her husband that he would pay twenty-five dollars per month, but he did not pay it regularly; that she went to Justice Claypool's court, and his clerk, Miss Brinker, wrote to her husband about the matter. Miss Brinker brought a page of the ledger into court, and it was admitted as claimant's exhibit "D." It showed fifty payments receipted for by Mrs. Johnson, beginning on August 6, 1930, which was before the complaint was filed in cause No. 20460. It is clear, however, that still other payments were made before that. We quote from Miss Brinker's testimony:

"Q. You didn't bring with you the earlier records, showing payments by Mr. Johnson to Mrs. Johnson beginning about the year 1927? A. I didn't bring those records. Q. You are aware, however, are you, that Mr. Johnson had been making payments from time to time thru your court to Mrs. Johnson for Mrs. Johnson's benefit? A. Yes; I am. Q. That was a result of an informal effort by Judge Claypool and yourself to induce Mr. Johnson to support his wife? A. That is as I recall it. However, I could check our records and see if any summons and complaint had been before that."

It was not shown that any prior summons and complaint had been issued.

The complaint in cause No. 20460 was filed on October 29, 1930, and a warrant for arrest forthwith issued. However, Johnson was not arrested until December, 1932, and he was not brought to trial until January, 1934. In the meantime, he went right on paying under the informal agreement, whatever it was, for the ledger shows that Mrs. Johnson received, through the court, $50 on November 19, 1930, $25 on January 19, 1931, $25 on January 26, 1931, $25 on April 17, 1931, $50 on June 12, 1931, $50 on September 24, 1931, $50 on March 2, 1932, and so on, in $25 payments

or multiples thereof, the last of these being on March 30, 1933, at which time she had received $600 over the period of the previous thirty-one months. The payments then dropped off sharply, April 27, 1933, $15; July 5, $25; September 27, $10.95; October 30, $15; December 13, $15; whereupon the charge of nonsupport of his daughter, which had been held over Johnson for more than three years, was pressed and brought to trial on the following January 17th.

There is in the record a letter written by Johnson to Judge Claypool on April 27, 1933, in which he said:

"Am unable to make my regular payment of $25 to Mrs. Victor Johnson due to lack of work but will do my best and remit with $15 this month."

It seems highly probable that Mrs. Johnson, as she testified, did seek support for herself and daughter; that Justice Claypool, without filing an action, persuaded Johnson to agree to pay $25 a month for that purpose for several years; that, when Johnson began to waver, the justice had Mrs. Johnson sign the complaint in cause No. 20460, but, since Johnson continued paying under the old arrangement with fair regularity for several more years, the charge was not pressed. It is quite understandable that Mrs. Johnson, when she came to court after January, 1934, and receipted for the succeeding payments on the same page in the same manner that she had receipted for them regularly for six or seven years, did not appreciate that they were being received on any new or different basis.

It is urged that, in any event, the five dollars per week payments, though technically for the support of the daughter, and even though, as a matter of record, earmarked for that purpose, and even though so expended, were, nevertheless, an actual assistance and support to the mother, in that they permitted her to use money for her own support that she would other-

wise have been compelled to spend for the support of the daughter. Furthermore, Mrs. Johnson testified that she actually used part of the money directly for her own support, and it is urged that she had a legal right to do so, citing Rem. Rev. Stat., § 6896 [P. C. § 1437], which reads as follows:

"The earnings and accumulations of the wife and of her minor children living with her, or in her custody while she is living separate from her husband, are the separate property of the wife."

The rule that the decisions of the department shall, on appeal, be deemed *prima facie* correct, applies only to decisions as to disputed questions of fact. Here, there is no dispute as to the facts, and the case turns wholly upon the construction to be given to that portion of the statute which we have quoted early in the opinion.

It seems fair to presume that the legislature had in mind that, when a husband and wife had lived separate and apart for two years or more, proof that the husband had contributed nothing to the wife's support during that period would raise a just inference that he had wholly abandoned her, and that proof that she had not attempted to secure relief by legal means during that period would raise an equally just inference that she had fully accepted the situation, and the abandonment was, therefore, complete.

The record here, though incomplete because it does not show the payments made through Justice Claypool's court between 1927 and August 6, 1930, shows from that time on fifty payments, the last being on May 25, 1936, less than a year before Johnson's death. All of them were received and receipted for by the appellant, Elizabeth Johnson. All of them were secured through the court, acting at first informally and then formally, but always as a result of her persistence. The

payments from January 17, 1934, on, and, therefore, those made during the two-year period before Johnson's death, were, it is true, made in conformity with a formal order requiring them to be made for the support of the child. The child, however, was living with, and being cared for by, her mother. In our opinion, giving the statute a reasonable interpretation, a payment by a husband to a wife living apart and caring for their child, even though designated for the support of the child, may be deemed to be a payment for the support of the mother as well. We, therefore, think the appellant received support from her husband within the two-year period, and that abandonment was not proven.

The appellant's counsel pray that we fix the fee to which they are entitled by virtue of the provisions of the last paragraph of Rem. Rev. Stat., § 7697 [P. C. § 3488]. This, however, is the function of the trial court. *Wintermute v. Department of Labor & Industries,* 183 Wash. 169, 48 P. (2d) 627.

The judgment appealed from is reversed. The trial court will fix an attorney's fee and remand the matter to the department of labor and industries for appropriate action in conformity with this opinion.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.

MILLARD, J., concurs in the result.

MAIN, J. (dissenting)—I am not in accord with the holding in this case, to the effect that a payment by a husband to a wife living apart and caring for their child, "even though designated for the support of the child, may be deemed to be a payment for the support of the mother as well."

I therefore dissent.

STEINERT, J. (dissenting)—I am in accord with the view expressed by Judge Main. However, I am of the further opinion that the burden was not upon the department, as alleged in the majority opinion, to prove (1) that Mrs. Johnson had lived separate and apart from her husband for two years prior to April 6, 1937; (2) that she had received no funds for her support and maintenance during that period; and (3) that she had not attempted by process of law, to collect funds for her support or maintenance during that period.

In my opinion, the burden was upon the claimant, the widow, to prove her status as a beneficiary under the act. It was not sufficient for her merely to show that she was the widow of the deceased. It was a part of her case to prove, by a preponderance of the evidence, either that she was living with the workman at the time of his death or that she had received, or attempted to collect, from him funds for her support, within a period of two years prior to his demise.

As I understand it, the workmen's compensation act is to be liberally construed only after the claimant has brought himself or herself within its terms as a beneficiary. The act is not to be liberally construed for the purpose of bringing the claimant within the act.

I dissent.

SIMPSON, J., concurs with STEINERT, J.