No. 488        July 10, 2024        751

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Compensation of
Maribeth T. Corrigan, DCD, Claimant.

YRC WORLDWIDE, INC.,
*Petitioner,*

*v.*

Maribeth T. CORRIGAN, DCD,
*Respondent.*

Workers' Compensation Board
2100343
A177768

Argued and submitted June 14, 2023.

Daniel Sato argued the cause and filed the brief for petitioner.

Jodie Anne Phillips Polich argued the cause for respondent. Also on the brief was Law Offices of Jodie Anne Phillips Polich, P.C.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

Reversed and remanded.

**JACQUOT, J.**

This workers' compensation case involves a dispute over claimant's entitlement to survivor benefits after his spouse was fatally injured in the course of her employment. The employer, YRC Worldwide, issued a denial of benefits on the ground that claimant fell within an exception to the definition of "beneficiary" because, although legally married to the decedent at the time of the fatal injury, claimant and the decedent were "living in a state of abandonment for more than one year at the time of the injury or subsequently." ORS 656.005(2)(b)(A) (2019).[1] The Workers' Compensation Board set aside the denial, based on a finding that claimant and the decedent were "living separate and apart" for less than one year before the fatal injury.

Employer now petitions for review of the board's order. For the reasons explained below, we conclude that the board erred in focusing exclusively on whether claimant and the decedent shared a residence at any time during the one-year period preceding the injury. Although "living separate and apart" is a requirement under a related sentence of ORS 656.005(2)(b)(A), the legislature did not make it a prerequisite for "living in a state of abandonment," the exception at issue in this case. We therefore reverse and remand for the board to consider more broadly whether claimant and the decedent were "living in a state of abandonment for more than one year"—that is, whether the parties had, through their conduct, demonstrated an intent to forsake the marital obligations for a period of more than one year.

## I.   BACKGROUND

We draw the background facts from the board's factual findings, which the parties do not challenge on judicial review. *See King v. SAIF*, 300 Or App 267, 268, 452 P3d 1039 (2019) (where factual findings are not challenged, those are the facts for purposes of judicial review).

Claimant and the decedent were married in 2001. In February 2019, the decedent filed a petition for separation

---

[1] ORS 656.005(2)(b) has since been amended, and this exclusion is no longer part of the statute. *See* Or Laws 2022, ch 6, § 5. Unless otherwise noted, all references to ORS 656.005(2)(b) are to the 2019 version of the statute.

of marriage. Her listed residence was the same as claimant's, an Oregon City address. Claimant filed a response to the petition in March 2019, which noted that he and the decedent lived at the same residence.

On June 19, 2019, the decedent filed a motion for an immediate danger order, in which she listed a contact address in Sandy, Oregon. In order to avoid contact with claimant, she noted that she avoided going home and worked at night.

The following month, the decedent filed declarations stating, under penalty of perjury, that claimant earned more than $115,000 per year, while the decedent earned only $16 per hour, and that she had a gross monthly income of $2,771. The decedent noted that she had no access to funds other than her paycheck, that she could not withdraw from claimant's account, and that claimant had kept their finances hidden. The decedent stated that she was living in her car and at women's shelters.

The decedent also filed a motion for leave to amend her separation petition, and the amended petition stated, again under penalty of perjury, that claimant and the decedent's children lived with both claimant and the decedent at the Oregon City address from 2001 until June 14, 2019

In various filings from the summer of 2019 through January 2020, the decedent represented that her address was in Sandy, Oregon, and that she had resided there since July 2019. She also filed another declaration regarding her finances, this time demonstrating a monthly income of $4,327, explaining that she was working unsustainable but necessary overtime because claimant was not providing child or spousal support.

In conjunction with a filing regarding spousal support in February 2020, the decedent signed a declaration stating, under penalty of perjury, that she had relocated from the family residence earlier than June—in February 2019. She stated that, since that time, she had received no support from claimant, which required her to work up to 70 hours in a week. The decedent stated that she was unable to earn enough to support her basic needs and the needs of

their children, and she requested temporary spousal support. Claimant, meanwhile, filed a response in which he denied all of the decedent's allegations.

In May 2020, the decedent was fatally injured in the course and scope of her employment. The separation proceeding was dismissed, and an attorney was appointed to administer the decedent's estate.

One of the questions that arose in administering the estate was claimant's entitlement to workers' compensation benefits. Employer's claims processing agent, Sedgwick Claims Management, hired an investigator to conduct research regarding the decedent and determine the status of her separation from claimant. The investigator determined that claimant and the decedent had stopping living together around June or July 2019 and that the decedent moved from the family residence to a residence in Sandy, Oregon, in approximately July 2019. Sedgwick then advised the decedent's estate that, "[p]ursuant to the information in our file, the surviving spouse is not a statutory beneficiary entitled to monthly benefits due to separation at the time of the compensable fatality."[2] Employer's denial was based on ORS 656.005(2)(b)(A), which provided that a "beneficiary" does not include:

> "[a] spouse of an injured worker living in a state of abandonment for more than one year at the time of the injury or subsequently. A spouse who has lived separate and apart from the worker for a period of two years and who has not during that time received or attempted by process of law to collect funds for support or maintenance is considered living in a state of abandonment."

Claimant filed a hearing request and contested employer's denial. An administrative law judge set aside the denial, and the board affirmed the ALJ's conclusion. The board reasoned that, contrary to employer's argument, the decedent's act of filing for separation did not establish that she was living separate and apart from claimant for purposes of showing a "state of abandonment." Rather, the board found "insufficient evidence in this record to establish

_____

[2] Employer accepted the claim with regard to the decedent's eligible children.

that claimant and decedent lived separate and apart for more than one year."

Employer now seeks judicial review of the board's order, arguing that the legislature intended "state of abandonment" to include "situations in which there is no longer a viable marriage or in which the marriage between the two parties has effectively ended," particularly where one party has filed for separation. Claimant defends the board's order, arguing that the board correctly reasoned that filing for separation does not establish a "state of abandonment" and that, in light of uncertain evidence as to when decedent obtained her own residence, the board correctly ruled that employer had not proved that the spouses had been living "separate and apart" for more than a year prior to the decedent's death.

## II.   ANALYSIS

### A.   *Standard of Review*

We review the board's order for substantial evidence and errors of law. ORS 183.482(8)(a), (c); ORS 656.298(7). "Whether the board correctly interpreted a statute is a question that we review for legal error under ORS 183.482(8)(a)." *Cardoza v. SAIF*, 332 Or App 72, 74-75, ___ P3d ___ (2024).

### B.   *Interpretation of ORS 656.005(2)(b)(A)*

Employer's petition for judicial review puts at issue the meaning of the phrase "living in a state of abandonment" in ORS 656.005(2)(b)(A). To determine the meaning of a statutory phrase, we generally use the framework described in *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009), discerning legislative intent by examining the text, in context, as well as legislative history that appears useful to the court's analysis. *Id.* at 172. However, "depending on the nature of the statutory term at issue, an administrative agency's construction of a statute * * * may be entitled to a measure of deference." *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 585, 341 P3d 701 (2014). Whether that is the case depends on whether the disputed terms are exact, inexact, or delegative, which itself involves a question of statutory construction, requiring us to examine the text of the statute

in its context. *See Timber Town Living v. Dept. of Human Services*, 320 Or App 154, 159, 513 P3d 28, *rev den*, 370 Or 602 (2022).

Exact terms "impart relatively precise meaning[s]," and "[t]heir applicability in any particular case depends upon agency factfinding." *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223-24, 621 P2d 547 (1980). Inexact terms "are less precise" and are "open to various interpretations," but they "embody a complete expression of legislative meaning." *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 354, 15 P3d 29 (2000). Finally, delegative terms "express incomplete legislative meaning that the agency is authorized to complete." *Id.* Examples of delegative terms include "good cause," "fair," "undue," "unreasonable" and "public convenience and necessity." *Springfield Education Assn.*, 290 Or at 228. If a term is delegative, then the court reviews the agency decision to ensure that the board's interpretation is "within the range of discretion allowed by the more general policy of the statute." *Id.* at 229.

Claimant suggests that the term "state of abandonment" is delegative, and that we must defer to the board's interpretation of that term. We disagree. As we will explain, the phrase has a complicated history and is open to various interpretations, but it draws from well-understood terms of art and represents a complete expression of legislative policy regarding when a spouse is excluded from the definition of "beneficiary." The term is not delegative but inexact. Thus, our task is to determine the intended meaning of the phrase, applying the ordinary tools of statutory construction. *CBI Services, Inc.*, 356 Or at 589 (where a phrase is "not so precise as to require only factfinding" nor "an open-ended phrase that necessitates further administrative agency policy making," the court's task is "to determine the intended meaning of the phrase, applying the ordinary tools of statutory construction").

We begin with the history of inclusion and exclusion of spouses as beneficiaries under the Workers' Compensation Act, because it provides necessary context for understanding the legislature's eventual inclusion of the phrases "state of abandonment" and "living separate and apart" in the

different sentences of ORS 656.005(2)(b)(A). *See Montgomery v. City of Dunes City*, 236 Or App 194, 199, 236 P3d 750 (2010) ("Changes in the text of a statute over time are context for interpreting the version at issue in a given case.").

When the Workers' Compensation Act was enacted in 1913, it expressly recognized that its purpose was to more fairly distribute the burden borne by workers, employers, and taxpayers in providing care and support for injured workers and their dependents. *See* Or Laws 1913, ch 112, § 1 (expressing the purpose and policy of the act). It defined a "beneficiary" to mean "a husband, wife, child or dependent of a workman, in whom shall vest a right to receive payment under this act." Or Laws 1913, ch 112, § 14. However, the act only provided death benefits to a widow or "invalid"[3] widower of an injured worker. *See* Or Laws 1913, ch 112, § 21(a)(1) (outlining compensation upon death for a widow or "invalid widower"). At that time, a husband was civilly and criminally liable for his wife and children's care, maintenance, and support; thus, there was a legal presumption that a wife and children were dependent. But that presumption went only one direction—a husband was not a dependent unless he qualified as "invalid."

In addition to limiting benefits to the widow or "invalid" widower, the act also excluded the husband or wife of an injured worker from "beneficiary" status under what was the precursor to the exclusion in ORS 656.005(2)(B)(a):

> "A husband or wife of an injured workman, *who has deserted said injured workman for more than one year prior to the time of the injury or subsequently shall not be a beneficiary under this act*."

Or Laws 1913, ch 112, § 21(j) (emphasis added).

The law did not define "deserted," nor did it describe what conduct would constitute "desertion." However, at that time, "desertion" had a well-understood meaning in the context of marriage: "The act by which a person abandons and forsakes, without justification, or unauthorized, a station or condition of public or social life, renouncing

---

[3] "Invalid means one who is physically or mentally incapacitated from earning." Or Laws 1913, ch 112, § 14.

its responsibilities and evading its duties." *Black's Law Dictionary* 360 (2nd ed 1910); *see generally Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) (when "a term is a legal one, we look to its established legal meaning as revealed by, for starters at least, legal dictionaries" (internal quotation marks omitted)). The phrase "more than one year prior to the time of the injury" also had significance in the matrimonial and divorce law of the time: "[W]illful desertion for the period of one year" was one ground for divorce. *See* Lord's Oregon Laws, title VI, ch VIII, § 507(5) (1910) (providing "willful desertion for the period of one year" as a cause for divorce). "[W]illful desertion" within the context of a divorce proceeding was understood to mean "the voluntary separation of one of [the] married parties from the other, or the voluntary refusal to renew a suspended cohabitation without justification either in the consent or wrongful conduct of the other." *Sisemore v. Sisemore*, 17 Or 542, 545, 21 P 820 (1889); *see also Black's Law Dictionary* 360 (2nd ed 1910) (defining "desertion in matrimonial and divorce law" to require the same elements as "willful desertion" in Oregon case law).[4] An act was "willful" when "there is a design to forsake the other spouse wrongfully or without cause, and thereby break up the marital union." *See Ogilvie v. Ogilvie*, 37 Or 171, 179, 61 P 627 (1900).

Therefore, when the legislature first enacted the workers' compensation scheme, the legislature would have understood a "husband or wife who has deserted" to mean a husband or wife who had abandoned, without justification or authorization, their marital responsibilities or duties for a period that would be cause for divorce. However, because the legislature omitted the word "willful" before "deserted," it also appears to have broadened "desertion" beyond what would have been grounds for divorce at the time, sweeping up not only "willful" desertions but also those separations to which the spouse had consented or acquiesced. *Cf. Luper v. Luper*, 61 Or 418, 424, 96 P 1099 (1908) ("[I]f, either expressly or by

_____

[4] Specifically, *Black's Law Dictionary* 360 (2nd ed 1910), defined "desertion in matrimonial and divorce law" as "[a]n actual abandonment or breaking off of matrimonial cohabitation, by either of the parties, and a renouncing or refusal of the duties and obligations of the relation, with an intent to abandon or forsake entirely and not to return to or resume marital relations, occurring without legal justification either in the consent or the wrongful conduct of the other party."

implication from the circumstances, the complainant consents to the original separation, or to its continuance, and that consent is not revoked, there is no such desertion as warrants a divorce[.]" (Internal citation omitted.)). Notably, in the case of a "willful desertion," the fact that the parties may have shared a physical domicile was not necessarily dispositive. *Cf. Baker v. Baker*, 99 Or 213, 195 P 347 (1921) (concluding that lack of cohabitation, as defined by marital sexual relations, "constitutes matrimonial desertion, though the deserting party consents still to live in the same house with the other").

In 1921, the legislature amended the Workers' Compensation Act to remove the one-year requirement from the spousal exclusion. But it inserted a requirement that the deserting husband or wife be "living apart" from the injured worker:

> "(j)   A husband or wife of an injured workman who has deserted and is living apart from said injured workman at the time of the injury shall not be a beneficiary under this act."

Or Laws 1921, ch 311, § 5. When the Workers' Compensation Act was codified in the Oregon Revised Statutes in 1953, that same exclusion was moved into the definition of beneficiary in ORS 656.002(1):

> "Beneficiary means an injured workman, and the husband, wife, child or dependent of a workman, who is entitled to receive payments under ORS 656.002 to 656.590; *provided, that a husband or wife of an injured workman who has deserted and is living apart from the injured workman at the time of the injury shall not be a beneficiary.*"

(Emphasis added.)

Neither the 1921 statute nor the 1953 version provided a definition of what it meant to be "living apart" from the injured worker. But that phrase, too, had an understood legal meaning in the context of matrimonial law that tracked the ordinary understanding of the term: *Black's Law Dictionary* defined "living apart" as "[t]o live in a separate abode." *Black's Law Dictionary* 1084 (4th ed 1951). So, as of 1953, the exception appears to have contemplated an act of desertion by the worker's spouse that resulted in the

spouses living apart at the time of the workplace injury—with no specific requirement as to how long the parties had been living apart prior to that injury.

Then came the most significant change to the exclusion, at least for purposes of this case. In 1957, the legislature revised the exclusion again, introducing the phrase "state of abandonment" and adding a new, separate sentence to the statute addressing a "wife who has lived separate and apart from her husband":

> "Beneficiary means an injured workman, and the husband, wife, child or dependent of a workman, who is entitled to receive payments under ORS 656.002 to 656.590; provided, that a husband or wife of an injured workman *[who has deserted and is living apart from the injured workman at the time of the injury shall not be a beneficiary]* **living in a state of abandonment for more than one year at the time of the injury or subsequently is not a beneficiary. A wife who has lived separate and apart from her husband for a period of two years and who has not during that time, received or attempted by process of law to collect funds for her support or maintenance, is deemed living in a state of abandonment**."

> ORS 656.002(1) (1957) (deleted language in italics and new language in bold).

Because the terms "abandonment" and "desertion" were often used interchangeably in the context of marriage and separation, it is difficult to tell what the legislature may have intended by that switch. *See, e.g.*, *Luper*, 61 Or at 423 ("Desertion or abandonment consists in the voluntary separation of one spouse from the other for the prescribed time, without the latter's consent, without justification, and with the intention of not returning." (Internal citations omitted.)); *see also Webster's Second New International Dictionary* 2 (unabridged 2nd ed 1952) (providing several definitions for "abandonment," including "1. Act of abandoning, or state of being abandoned (in any sense); total desertion ***; 2. Law **:** a Desertion by a husband or wife of his or her consort with the intention of creating a permanent separation").

However, the grammatical and structural changes in the statute were significant legislative choices. First, by

using the phrase "state of abandonment" rather than "who has deserted and is living apart," the statute turned the focus to the state of the marriage rather than specific conduct or living situation of the spouse of the injured worker. *See Webster's Second New Int'l Dictionary* 2461 (unabridged 2nd ed 1952) (providing several definitions of "state," including "1. Mode or condition of being; position; nature; condition \*\*\* 3. Condition with reference to wealth, social position, etc.").

Second, with the addition of the new sentence, the legislature created a conclusive statutory presumption of abandonment. Given the structure of the statute, that presumption—in the case of a wife "who has lived separate and apart from her husband for a period of two years and who has not during that time, received or attempted by process of law to collect funds for her support or maintenance"—appears to have been one way, but not the only way, that a spouse of an injured worker might be in a "state of abandonment."

The legislature's removal of the "living apart" requirement in the first sentence, coupled with its explicit inclusion of the requirement of "living separate and apart" in the second sentence, creates a measure of ambiguity as to whether "living separate and apart" is a necessary prerequisite to a "state of abandonment." The phrase "separate and apart" was itself a term of art in the context of marriage and referred to circumstances where "the spouses have come to a parting of the ways and have no present intention of resuming marital relations and taking up life together under the same roof, not where they are residing temporarily in different places for economic or social reasons." *Black's Law Dictionary* 1084 (4th ed 1951). On the one hand, the legislature may have understood "state of abandonment" to necessarily include such a requirement; on the other hand, it may have intended the parties' residence to be one factor to consider in determining whether the parties were "living in a state of abandonment," as opposed to a prerequisite.

We are not aware of any specific legislative history that sheds additional light on the 1957 changes, but the statute is identical to an exclusion that existed under Washington's Workmen's Compensation Act. *See, e.g, Weyand*

*v. Dep't of Lab. & Indus.*, 181 Wash 114, 115, 42 P2d 6, 6 (1935) (applying a statute providing, "A husband or wife of an injured workman, living in a state of abandonment for more than one year at the time of the injury or subsequently, shall not be a beneficiary under this act. A wife who has lived separate and apart from her husband for the period of two years and who has not, during that time, received, or attempted by process of law to collect, funds for her support or maintenance, shall be deemed living in a state of abandonment.").

By the time Oregon adopted that same language, the Washington Supreme Court had applied its statute on two occasions, so we look to those cases for guidance as to what the legislature might have intended when it borrowed that language. *See Jones v. General Motors Corp.*, 325 Or 404, 418, 939 P2d 608 (1997) ("If the Oregon Legislature adopts a statute or rule from another jurisdiction's legislation, we assume that the Oregon legislature also intended to adopt the construction of the legislation that the highest court of the other jurisdiction had rendered before adoption of the legislation in Oregon.").

In *Johnson v. Dep't of Lab. & Indus. of Washington*, 3 Wash 2d 257, 258-59, 100 P2d 382, 383 (1940), the court explained how the two sentences operate together:

> "The first sentence [excluding the 'wife of an injured workman, living in a state of abandonment for more than one year at the time of the injury or subsequently'] *** has been a part of the workmen's compensation act from the beginning. The second sentence [which addresses when a wife is 'deemed living in a state of abandonment'] was added [in 1927]. It provides a method, *though not necessarily an exclusive one, of proving the abandonment spoken of in the first sentence.*"

(Internal citations omitted; emphasis added.) That case law is consistent with what can be gleaned from the text of the statute, which is that the second sentence is not the exclusive means of proving a "state of abandonment."

Beyond that, the Washington cases provide only limited guidance as to the meaning of specific statutory language, but they are consistent with the view that the second sentence is a narrower way of proving that the parties had,

for the requisite amount of time, demonstrated their intent to permanently sever the marital union and accompanying obligations. For example, in *Johnson*, the court explained:

> "It seems fair to presume that the legislature had in mind that, when a husband and wife had lived separate and apart for two years or more, proof that the husband had contributed nothing to the wife's support during that period would raise a just inference that he had wholly abandoned her, and that proof that she had not attempted to secure relief by legal means during that period would raise an equally just inference that she had fully accepted the situation, *and the abandonment was, therefore, complete.*"

3 Wash 2d at 263, 100 P2d at 385 (emphasis added). In that case, the court held that "a payment by a husband to a wife living apart and caring for their child, even though designated for the support of the child, may be deemed to be a payment for the support of the mother as well." *Id.* at 264, 100 P2d at 385. Thus, the court concluded that "appellant received support from her husband within the two-year period, and that abandonment was not proven." *Id.*

In *Weyand*, the court considered the application of the exception in the case of spouses who had been apart for more than two years while one spouse looked for work. The court stated, "It cannot be contended that, at the time mentioned, there was any breaking up of the family by a separation which either party anticipated or desired would be permanent." 181 Wash at 117, 42 P2d at 7. The court held that "[i]t cannot be the intention of this section that a wife 'be deemed living in a state of abandonment' while she is being supported out of community funds voluntarily turned over to her by her husband when he leaves her to search for work, *no facts appearing which would indicate any intention on the part of either the husband or wife to break up the home or to terminate the marital relation, either in fact or by legal process.*" *Id.* (emphasis added).

Based on the two-sentence structure of the statute and the interpretation by the Washington Supreme Court, we are persuaded that the Oregon legislature in 1957 intended the second sentence to operate as one method of showing that the parties had manifested an intention to

forsake the marital relationship. We are further persuaded that, in light of the statute's enactment history and the removal of a "living apart" requirement from the first sentence, the legislature did not intend "living separate and apart" to be a prerequisite under the first sentence of the statute. *See Belinskey v. Clooten*, 237 Or App 106, 110, 239 P3d 251 (2010), *rev den*, 349 Or 601 (2011) (considering the significance of wording changes between the current version and its predecessor).[5] Rather, by removing "living apart," the legislature gave the first sentence a broader meaning, whereby a "state of abandonment" could include the concept of a "willful" desertion or a desertion in which the parties have acquiesced. *See Springfield Utility Board v. Emerald PUD*, 339 Or 631, 642, 125 P3d 740 (2005) ("[U]se of a term in one section and not in another section of the same statute indicates a purposeful omission[.]" (Internal quotation marks omitted.)). And, as described earlier, the fact that parties may have been living in the same physical domicile was an important factor, but not necessarily a dispositive one, for purposes of "willful desertion." *See* ___ Or App at ___ (slip op at 10); *see also Weatherspoon v. Weatherspoon*, 195 Or 660, 246 P2d 581 (1952) (explaining that "the spouse remaining home whose acts or omissions have caused the other spouse to leave the home may be guilty of desertion entitling the other spouse to a divorce therefor *** [and] such desertion by the spouse remaining home [is deemed] 'constructive desertion'"); ORS 107.210 (1957) (wife can file for separation from bed and board if husband fails to provide support for six months or if husband has willfully deserted for any time period).

    Although the legislature later removed some of the gendered language in the statute, replacing "husband" and "wife" with "spouse," Or Laws 1975, ch 556, § 4, and "workman" and "his spouse" with "worker," ORS 1977, ch 109, § 2, it did not otherwise substantively change the statute in the years been 1957 and 2019. Specifically, the phrase "living in

---

[5] We note that Washington subsequently added the living "separate and apart" requirement to the first sentence in 1973. *See* RCW 51.08.020 (1973) ("PROVIDED, That a husband or wife of an injured workman, living separate and apart in a state of abandonment, regardless of the party responsible therefor, for more than one year at the time of the injury or subsequently, shall not be a beneficiary.").

a state of abandonment for more than one year at the time of the injury or subsequently" carried through to the 2019 version.

Given that history, we understand the phrase "living in a state of abandonment for more than one year at the time of the injury or subsequently" in the first sentence of ORS 656.005(2)(b)(A) to refer to circumstances in which the parties have, through their conduct, forsaken the marriage for a period of more than a year. The filing of a separation petition is a relevant consideration, as is the financial interdependence of the parties. And there is no question that the fact of a separate domicile is a relevant consideration—and perhaps the most significant one in many cases—but the legislature did not make it a prerequisite for proving that the parties had, for more than a year, renounced the marriage and were living "in a state of abandonment" for purposes of the first sentence of ORS 656.005(2)(b)(A).

In this case, the board erroneously treated "living separate and apart" as a requirement under the first sentence of ORS 656.005(2)(b)(A). Its ruling against employer turned on its finding that claimant and the decedent lived separate and apart for less than one year before the fatal injury.[6] Because the board looked only to whether the parties were living separate and apart, it did not engage in the broader inquiry contemplated by ORS 656.005(2)(b)(A) as to whether the parties had, through conduct, demonstrated an intent to forsake the marital obligations for a period of more than one year. We therefore reverse and remand for reconsideration.[7]

Reversed and remanded.

---

[6] The board initially stated that there was "insufficient evidence in this record to establish that claimant and decedent lived separate and apart for more than one year." Later, the board appeared to make an affirmative finding but still relied exclusively on whether claimant and the decedent "lived separate and apart": "Under these particular circumstances, we find that claimant and decedent lived separate and apart for less than one year before the fatal injury (*i.e.*, from June 2019 until May 14, 2020). Thus, claimant is a 'beneficiary' and, therefore, is entitled to survivor benefits pursuant to ORS 656.204(2)(a)."

[7] Because we reverse and remand, we do not reach claimant's cross-petition regarding the denial of attorney fees.